# CHARLESTON.

## BON AQUA IMP'T CO. v. STANDARD FIRE INS. CO.

Submitted January 23, 1891.—Decided February 10, 1891.

1. EVIDENCE—DEMURRER TO EVIDENCE—PRACTICE.

A motion to exclude or strike out evidence is not in all cases the equivalent of a demurrer to evidence, and should not, without modification, be permitted to supersede and replace such demurrer.

2. INSURANCE COMPANIES—ESTOPPEL.

A fire insurance company, which contracts with and receives money from certain persons acting as a corporation under an invalid charter granted under a general law, but acting within both charter and general law, can not, after the property insured has been burned, and the time to pay has come, avoid payment by denying the corporate existence of the insured.

*Caldwell & Caldwell* for appellant, cited:

10 W. Va. 560, 567; Id. 572; 8 W. Va. 553; Id. 568; Id. 533, 536; Id. 515; Id. 475, p't. 5, Syll., 481, 483, 484; 30 W. Va. 27; Wood Fire Ins. §§ 414 notes, 429 note 5; 43 Pa. St. 350; 50 Ill. 120; 6 Cush. 342; 42 Pa. St. 188; 3 Grant Cas. 325; 31 W. Va. 841, 851; 28 W. Va. 22; Id. 591; 33 W. Va. 566; 2 Lea 743 p't 5, syll; 12 Heisk. 494, 495; 4 Lea 75, 78; Code, c. 125, s. 41; 21 W. Va. 380; 23 W. Va. 280; 38 N. J. L. 140; 109 Mass. 568; 5 Gray 52; 29 Me. 337; 1 Chitt. Pl. 4, 5; 2 Phill. Ins. 593; 1 Johns. 139; 4 Wend. 75; 10 Mass. 287; 52 Ind. 157; 51 Ind. 246; 66 Barb. 577; 26 N. Y. 490.

*W. P. Hubbard* for appellee, cited:

Code, c. 125, s. 41; 5 Rand. 329; 32 W. Va. 99; 28 W. Va. 22; 33 W. Va. 56; 12 W. Va. 526; Mor. Corp. §§ 774, 776,

777; 110 U. S. 81 p't 4, syll.; 19 Ins. L. Journ. 450; 29 W. Va. 98; 33 W. Va. 548.

Holt, Judge:

This was an action of *assumpsit* in the Circuit Court of Ohio county, brought by the Bon Aqua Improvement Company, plaintiff below, against the Standard Fire Insurance Company on a policy of fire insurance. The form of declaration was that given in the Code, c. 125, s. 61. On the 20th of April, 1890, defendant appeared and demurred. At September term the court overruled the demurrer. Defendant then moved that the plaintiff be ordered to file a more particular statement of its interest in the property insured, in the policy, in the loss sued on, of the nature of its claim and of the facts expected to be proved, which motion was granted; the plaintiff filed such statement; defendant then moved to dismiss, and, if such motion to dismiss should be held to be improper, then defendant demurred to the declaration and the statement aforesaid; and thereupon the Court overruled the motion to dismiss, and also overruled the demurrer. Thereupon defendant filed an affidavit alleging that this suit and one then pending in the same court in the name of R. Dudley Frayser against same defendant were for the same cause of action; that the two policies sued on in the two cases were the same; and that the causes of action in the two suits were identical; and moved that the proceedings in this action be stayed, until the one in the name of R. Dudley Frayser be decided. The court ruled that one of the actions be stayed, but that plaintiff could elect which one to proceed in, and, plaintiff electing to go on with this one, the court refused to stay the ame. Thereupon defendant, under our statute (Code, c. 125, s. 64) pleaded that it is not liable to plaintiff as in said declaration alleged, to which plaintiff replied generally; and on October 3d, 1889, defendant filed with its plea a particular statement of the nature of its defence, specifying plaintiff's failure to comply with certain clauses; conditions and warranties annexed to the policy; and plaintiff filed a statement that it intended to rely on waiver and estoppel on certain facts mentioned. Defendant tendered

its plea, verified by affidavit, denying that plaintiff is a corporation; to the filing of which plaintiff objected, but the court permitted the plea to be filed, and plaintiff replied generally. Defendant excepted to certain parts of the deposition of R. Dudley Frayser, witness for plaintiff, which exceptions the court passed upon, sustaining some and overruling others, as set out in the record.

On May 27th, 1890, the cause came on for trial, the jury was impanelled and sworn, and, the evidence on behalf of plaintiff having been heard, the defendant moved the court to exclude plaintiff's evidence, without assigning any ground ther`?for, and the court sustained the motion, and the plaintiff excepted. Thereupon the jury rendered the following verdict: "We, the jury, find for the defendant." The plaintiff then moved the court to set aside the verdict, and grant a new trial, accompanying its motion with the affidavit of R. Dudley Frayser, but the court overruled the same, and gave judgment for defendant, and plaintiff excepted, and tendered his bill of exceptions, which was signed by the judge and made part of the record. In this all plaintiff's evidence is set out, defendant having offered none.

I do not now propose to consider the practice of motions to exclude evidence from the jury, further than what may relate to one point involved in this case. Incompetent evidence is often excluded. A document permitted to be read with a promise to prove its execution, which is not done, may be then excluded; and so in other cases. But our courts can not compel the plaintiff to suffer a nonsuit, although the result is not final. He has a right to have his case go to the jury. But the court can instruct the jury, that, unless they believe from the evidence certain facts, there being as to one or more of them no evidence or no proper evidence, then they should find for defendant. So, in a proper case, the court may virtually instruct the jury if they from the evidence believe *etc.*, then to find for the plaintiff or defendant, as the case may be. But I do not understand the law to be that a motion to exclude or to strike out can, at the option of the party, be made in all cases to take the place of a demurrer to evidence. If it can, it

puts it in the power of the party making the motion to get the benefit, without the risk of a demurrer to evidence, and leads to the multiplication of trials at law and to indefinite protraction of the litigation.

The points made by the defendant to justify the rulings of the court are : (1) The plaintiff did not show that the assured, sustaining loss, had forthwith given notice in writing of the loss to the defendant. (2) Plaintiff sues as a corporation, and is therefore put to the proof, and wholly fails to show its corporate existence. (3) Defendant is sued as a corporation, but the case is destitute of evidence on that point. (4) The evidence introduced by plaintiff shows that it, or rather the beneficiary mortgagee, had attempted to commit a fraud on defendant by an attempt to bribe the adjuster.

1. Did the plaintiff, sustaining the loss, forthwith give notice in writing of such loss to the defendant company, or did defendant waive it? The evidence is that notice of the damage or loss by fire was given to the defendant company as soon thereafter as possible, which proof and notice were given in the manner required by the policy. This was the deposition of Frayser. The court, sustaining the exception, suppressed the latter part of the answer—"which proof and notice were given in the manner required by the policy." This is a question of fact for the jury, and with such evidence on the point, though general, not stating when, how or to whom or by whom notice was given, we can not undertake to say there was no evidence tending to show notice ; especially as there is nothing tending to show want of notice, but, on the contrary, evidence tending to show that it was received or waived, for the defendant acted as though it had received notice, sending its adjuster to the locality on the 13th of September, the fire having occurred August 24th, 1888. It is true we find on the blank furnished assured a provision that such furnishing of the blank, or making up of proofs by the adjuster for the company, is not to be considered as a waiver of any rights of the company ; for though the rights may not be waived we can not contract against the effect of certain things on the mind as evidence, though we may be estopped in certain

cases. Nor do I see anywhere among the numerous forfending clauses any one providing that ,a clause against waiver may not itself be waived, or, if there be such, that that also may not be waived. But, be these things as they may, we know from this record of a certainty that the defendant had knowledge of the fire very soon after it took place, and acted on such knowledge; but, more than that, the witness Frayser expressly says : "Notice of the damage or loss by fire was given to the defendant company as soon thereafter as possible." Therefore there was some evidence tending to show even written notice.

2. Is there any evidence tending to show that plaintiff is a corporation, defendant having filed a plea, supported by affidavit, denying plaintiff's corporate existence? The plaintiff professed to be and to act as a corporation under the corporate name of "Bon Aqua Improvement Company," created by and under the laws of the state of Tennessee. The laws of Tennessee authorized and permitted the formation of such private corporations. The plaintiff read in evidence a writing and certificate purporting to be the charter of incorporation. This instrument seems to be a formal charter. Article 1 gives the name; article 2, the general nature of the business—to establish an institute of learning and a sanitarium for the benefit of invalids, with power to sell, buy, transact its business etc., in the language of the Tennessee Code. Article 3 gives time of commencement (March 1st, 1887) for the purpose of securing subscriptions to the stock. Article 4 provides that the business affairs shall be managed by a board of directors, five in number, who shall elect a president, secretary, and treasurer. Artice 5 gives the capital stock, signed by the names of the five incorporators. It was acknowledged February 15th, 1887, before a notary public; seems to have been registered in Hickman county; and was filed 18th February, 1887, and recorded in the office of the secretary of state. But defendant claims that the corporators having acknowledged their agreement before a notary, and not before the clerk of the County Court, it is invalid and void. This seems to be conceded by plaintiff's counsel. Section 1712 of Code of Tennessee provides that "persons acting as a

corporation under the provisions of this chapter will be presumed to be legally incorporated until the contrary is shown; and no such franchise shall be declared actually null and forfeited except in a regular proceeding brought for the purpose." Section 1713 makes contracts made with a body of men acting as a corporation enforceable for or against them, and neither party will be allowed to set up a want of legal organization, and make copies of such articles evidence for and against the corporation. Section 1697 requires the secretary of state to have published and bound with the acts of each general assembly a certified list of all such corporations, which is made legal evidence of their existence. It is fair to presume, therefore, when defendant contracted with the plaintiff company in its corporate name of Bon Aqua Improvement Company it knew that it claimed and professed to be a corporation, and was taking out its policies as, at least, a *de facto* corporation, and is therefore not permitted to deny it. A jury would be warranted, in drawing such an inference from all the facts and circumstances. It signed notes and made out proofs of loss in its corporate name, signed by its president. Here we have the Tennessee law authorizing the formation of such corporations, proceedings taken for the purpose in professed compliance with the law in order to become a corporation by that name, and acts of subsequent user, and very slight evidence of user beyond this is all that can be required. *Merriman* v. *Magiveny*, 12 Heisk. 494. On the motion to exclude this evidence, we must infer that defendant knew it was contracting with a party that professed to be a corporation, and when defendant contracted with plaintiff, and received its money, now, after the building is burned, and the time to pay has come, it can not avoid payment by denying the corporate existence of the insured.

3. Is there any evidence tending to show that defendant is a corporation? It is sued as the Standard Fire Insurance Company of Wheeling, and by that name it caused the policies sued on to be signed by its president and attested by its secretary, signed, "William Ellingham, President. Charles W. Conner, Secretary." From that alone, on the motion to exclude, we may infer that it professed to act as

a corporation.    Why in such a case, on their behalf, should
we conclude defendant to be a partnership, rather than a
*de facto* corporation ?   I notice during the progress of this
cause, when an affidavit is to be made, such as the one
denying that the plaintiff is a corporation, they call in, not
the acting partner or head clerk or manager, but Charles
W. Conner, who, "being duly sworn, says that he is the
secretary of the Standard Fire Insurance Company," *etc.*
They do not wish us to infer, for the purpose of this occas-
ion, that there is either something wrong or something very
unusual in their their style or mode of doing insurance busi-
ness, giving us not the slightest token of who or what they
are, if not a corporation.    In *Manufactory* v. *Davis,* 14
Johns. 238, 245, the court, in speaking of corporations
created under general law, very much as ours are created
says : "The general act relative to incorporations for manu-
facturing purposes directs the certificate, which is to contain
the requisite evidence of the company's having become a
body politic or corporate, to be filed in the office of the sec-
retary of state, and declares that, as soon as such certificate
shall be so filed, the persons, who shall have signed and
acknowledged the same, and their successors shall become
a body politic and corporate.    This is a public law ; certifi-
cate becomes matter of record.    The incorporation ought
not, therefore, to be considered a mere private act, since it
was under a general law of the state, and the evidence
thereof is matter of record."    Our law (Code, c. 54, s. 17)
makes it the duty of the secretary of state, at every regular
session of the legislature, to deliver to the clerk of the
house of delegates accurate copies of every certificate of
incorporation not before reported by him ; and it shall be
the duty of such clerk to cause the same to be printed and
bound with the acts of the session.    By section 19 of same
chapter, "the copy printed with the acts of the legislature
shall as evidence, be equivalent to the original."    That the
court will take judicial notice of such private corporations,
created under general law, seems also to have been held
in the cases of *Railroad Co.* v. *People,* 116 Ill. 401, (6 N. E.
Rep. 497) ; *Gormley* v. *Day,* 114 Ill. 185 ; *Kelly* v. *Railroad
Co.,* 58 Ala. 489.  But see 1 Whart. Ev. § 294 ; citing *Hard*

*v. Decorah,* 43 Iowa 313.   We do not now decide this question, because it may be of general importance in this State, and does not necessarily or distinctly arise out of the facts of the case as presented by this record.

4. Did plaintiff, through its agent and the beneficiary by mortgage, R. Dudley Frayser, attempt to commit a fraud on defendant?   It is stated by counsel for plaintiff in error in their brief that the Circuit Court sustained the motion to exclude solely on the ground of an attempt at fraud.   So many exceptions, qualifications, requirements, conditions, warranties, drawbacks, are now often found indorsed on or annexed to policies, bills of lading, and the like, that it has given rise to the charge that they are pitfalls for the unwary, ank'that payment of loss has now become matter of grace or of business policy, rather than a matter of enforceable right.   Long experience, no doubt, has shown very many of them to be the dictates of prudence, if not necessary. Such a charge certainly can not be made against the clause now in question.   There is some evidence tending to show an attempt to bribe the adjuster, a charge of a criminal nature.   It is based on the the deposition of Mr. Hart, the policy broker and the adjuster of loss, taken by defendant to be read on its behalf, but read as evidence by plaintiff, and made against Mr. Frayser, plaintiff's witness, who had a mortgage on the property for more than the combined insurance, some fourteen thousand dollars or fifteen thousand dollars ; therefore by the beneficiary for whose use the suit was, in fact, brought.   Hart says that in placing the policies, one for five hundred dollars running from noon January 24th, 1888, to noon January 24th, 1889, the other for one thousand dollars, on the same property, in favor of L. J. Worst, running from 7th January, 1888, to January 7th, 1889, on January 12th, 1888, by indorsement changed by defendant to cover in the name of plaintiff, he acted as broker of the plaintiff.

The burning occurred August 24th, 1888 ; the property was worth twenty four thousand dollars ; it was a total loss ; and there is no evidence or charge of complicity on the part of the assured.   On the 28th of August, 1888, Frayser wrote to Hart Bros. acknowledging the receipt of their

letter of 27th inst., evidently written in regard to note given by plaintiff for premium taken up and then held by Hart. He speaks of having written to Hart on 24th August, evidently about the burning, and says in conclusion: "I have turned the matter of my interest in these policies over to Mr. J. M. Bonner, of your city, for collection, and you will please confer with him. By taking Worst's note, you have made yourself liable for the premium, and the policies would be good to the holder; but I don't intend to receive anything on these policies without you are paid for what you incurred a liability, especially if I am to be benefited by it. Please act with Mr. Bonner in adjusting and securing my interest under these policies, and you shall not be out of pocket one cent, and may be in pocket many dollars."

So far Hart was his agent, and not the agent of the defendant. By provision indorsed on policies, Hart could not in the matter be regarded as the agent of defendant. Some time after and before September 13th, 1888, Hart, as the agent of the defendant, went upon the ground to adjust the loss, and spent a day with Frayser at Bon Aqua Springs where the building had been. Now, Mr. Frayser, whose deposition was taken to be read and was read on behalf of plaintiff, says, among other things: "The frame building known as 'Bon Aqua Springs Hotel,' covered by these policies, was burned August 28th, 1888. The cost of the building was something over thirty two thousand dollars; was worth at the time of the fire twenty four thousand dollars to twenty six thousand dollars. The loss was total. Notice of the damage or loss by fire was given to the defendant company as soon thereafter as possible. The amount of loss was adjusted and received by the defendant, and it promised to pay the same. That Hart, the agent of the defendant company, went to the spot where the hotel was burned at Bon Aqua Springs in Hickman county, Tenn., with witness, examined the loss, and, as agent of defendant, admitted it was a total loss, and so notified defendant. The proof of loss was sworn to by an officer of the Bon Aqua Improvement Company, by the witness, and was received by the defendant company."

Now comes the important item of evidence in which Mr. Hart contradicts Mr. Frayser. The witness Mr. Frayser continues his testimony : "Mr. Hart, the agent aforesaid, proposed to witness that, if he would take off ten *per cent.* of the policy, he would have the company pay the amount of the policy, less the ten *per cent.*, immediately on receipt of proof of loss; and I agreed on that account to take off ten *per cent.*, provided the policy was paid within the sixty days after the proof had been sent on. As the company has not paid the policies up to the present time, and did not pay them within the sixty days, I decline to take off the ten *per cent.*, and so informed Mr. Hart."

Mr. Hart in his deposition says : "After the fire I met Mr. Frayser at Bon Aqua, and, after spending a large part of the day inquiring as to the nature of the fire, Mr. Frayser and myself returned from the scene of the fire to the depot, and while returning he spoke to me about the fire, stating that there were some complications about it, and that he supposed that I had satisfied myself that it was a total loss, and that in view of these complications, that if I would make up the proofs for a total loss he would receipt for same, and would collect only ninety *per cent.*, and leave me ten *per cent.* for my services." He also says that he did not make to Mr. Frayser any such proposition as stated by him. "I agreed only to recommend payment, and Mr. Frayser so understood it." This issue had become important, involving a charge of attempted bribery as well as the indemnity for loss. Suppose it had been submitted to a jury. They, after putting their heads together, might well have said : " These two statements of what occurred at Bon Aqua Springs differ so widely in meaning that one is entirely innocent and the other criminal, yet they differ but little in words; the change of a word or two would change one into the other. Some people hear badly, apprehend indistinctly ; remember imperfectly, and narrate incompletely. These two conflicting witnesses are now brought before us and confronted with each other. We are not enlightened by their demeanor; at the most, it is but a question of veracity. The burden of proof on this issue is on defendant, the one who makes the charge, and

this with a special force in criminal and *quasi* crimnal charges. We are left in doubt, and so we will leave the question where we find it, by finding for the plaintiff."

Can the court say that it would at once and without hesitation have set aside such verdict, because there was a clear and decided preponderance of evidence against it, or no evidence at all tending to sustain it? If not, and it was in other respects a question eminently fit to be submitted to a jury, then the motion to exclude should have been overruled, and the party at least put to his demurrer to evidence. This would have been attended with a wholesome risk, and have brought the litigation to an end. The mere fact that both depositions are read on the same side, may affect, but can not control, the question. A man can not impeach, but he may contradict, his own witness. Upon the whole, I do not think it can be said that plaintiff's case was entirely without evidence on any essential point, or of evidence tending to prove it, or that on any issue there was such a clear and decided preponderance of evidence against the plaintiff that the court would at once have set aside a verdict in its favor.

The judgment complained of must be reversed, and a new trial be awarded.

REVERSED. REMANDED.