BERNHARD ENGEL

v.

GUSTAV SALOMON ET AL.

*Replevin—Sales—Rescission—Fraud—Warehouseman—Advances.*

1.   No one, who has not obtained some legal hold upon it, can have any legal concern with any disposition a debtor may make of his property.

2.   The title of a fraudulent grantee, who has obtained property transferred with intent to hinder and delay creditors, may be asserted against all persons, except creditors invested with a lien by contract or by process.

3.   A creditor who can avoid a transfer of goods made to hinder or delay creditors, is one to whom the grantor is indebted on a demand sounding in damages, as for a tort, or arising under a contract; but such a creditor can not seize his debtor's property, either in the hands of the debtor himself or of his fraudulent grantee, merely because he has a demand against the debtor which he may reduce to judgment.

4.   The question of whether there has been a proper or sufficient tender to the fraudulent vendee of what he delivered to the vendor, to warrant the latter in rescinding the sale, is *res inter alios*, when the suit is between the vendor and a third person.

5.   This court holds that mere knowledge by the holder of warehouse receipts, covering goods upon which he had made advances, that the alleged owners transferred the same in order to delay and defraud their creditors, would not charge him with notice that they purchased the same fraudulently.

6.   The true rule with respect to notice is, that the circumstances must be such as not only lead to, but direct the course of inquiry which, if pursued, will end in the discovery of the facts, with notice of which one is to be charged.

7.   In the case presented, it is held, in view of the evidence, that it was incumbent upon the parties selling the tobacco in question, to show that it was purchased by persons named, fraudulently, and that plaintiff herein, at the time he made the loan and received the warehouse receipts, knew that the tobacco had been so fraudulently purchased, or that he had before, and at the time of making the loan, knowledge of such facts and circumstances as would put a reasonably prudent man on notice that said goods were fraudulently purchased, or that the loan and transfer of the receipts was, as between the plaintiff and the purchasers, a sham, or a merely colorable or pretended transaction, formal and not real or actual, and not intended, as between themselves, to pass the title to the money on the one hand, or the warehouse receipts on the other, in order to defeat plaintiff's title thereunder.

[Opinion filed November 2, 1891.]

APPEAL from the Superior Court of Cook County; the Hon. KIRK HAWES, Judge, presiding.

Messrs. TENNEY, CHURCH & COFFEEN, for appellant.

Messrs. PAGE, ELIEL & ROSENTHAL, and KRAUS, MAYER & STEIN, for appellees.

MORAN, J.   An action of replevin was brought by appellant against appellees to recover fifty-one bales of Havana tobacco, for which appellant held the warehouse receipts.

The tobacco had been purchased by Weinberg Bros. from appellees on credit, the agreement being that appellees should advance money to discharge the duty on it (it being at the time of the sale in a bonded warehouse in appellees' name), and draw on the Weinbergs for the amount of money so advanced.   The tobacco was received by Weinberg Bros. and was by them stored in a warehouse, and they paid the draft drawn by appellees for the amount of the duties.   Within a few days after the receipt of the tobacco, the warehouse receipts for the same were delivered by the Weinberg Bros. to appellant as security for a loan of $3,500, which he then made to them.   The day after the loan was made, several judgments by confession were entered up in the courts of Cook County against Weinberg Bros., and their place of business was taken possession of and closed by the sheriff.   Thereupon appellees brought their replevin suit against the warehouse company that had the tobacco in store and the Weinberg Bros., claiming the right to rescind the sale on the ground that Weinberg Bros. purchased the goods by fraud and with an intent not to pay for them.   After appellees had obtained possession of the goods in the warehouse upon their replevin writ, appellant took them under the replevin writ sued out in this action.   To the declaration, which was the ordinary one in replevin, appellees pleaded among other pleas, property in themselves, and property in Weinberg Bros.

It was not contended on the trial that appellees had taken any steps to rescind the sale of the tobacco till after appellant

Engel v. Salomon.

had made the loan of $3,500 to Weinberg Bros. and received the warehouse receipts as security. To defeat appellant's title under the warehouse receipts, it was incumbent on appellees to show that the tobacco was purchased from them by the Weinbergs fraudulently, and to show further that appellant, at the time he made the loan and received the warehouse receipts, knew that the tobacco had been so fraudulently purchased, or that he had before, and at the time of making the loan, knowledge of such facts and circumstances as would put a reasonably prudent man on notice that said goods were fraudulently purchased, or that the loan and transfer of the receipts was, as between appellant and the Weinbergs, a sham, or a merely colorable, or pretended transaction,formal, and not real or actual, and not intended, as between themselves, to pass the title to the money on the one hand, or to the warehouse receipts on the other.

Appellant admitted at the trial that the purchase of the tobacco was made by the Weinbergs with the fraudulent intent not to pay for it, and that admission reduced the issues of fact between the parties to two, which were as follows: did appellant know of said fraud or of circumstances and facts which would charge him with knowledge thereof when he loaned the money and received the receipts, or was the loan and transfer of receipts fictitious, simulated and formal, and not a real and genuine transaction.

Upon these two issues there was a large volume of evidence introduced which we are not called on to discuss at this time, farther than to say that a jury might infer from some portions of it, that the Weinbergs, in making the loan from appellant and transferring the warehouse receipts to him, had the intent to, and made said transactions for the purpose of hindering, delaying and defrauding their creditors, and that appellant knew of said intent.

At the request of the appellees the court gave to the jury the two following instructions— Nos. 2 and 5:

"The court instructs the jury that in this case plaintiff seeks to recover possession of the goods in question on the ground that at the time of bringing this suit he was, in law,

entitled to the possession of the said goods, through a pledge
of warehouse receipts representing the same, made to him to
secure a loan of $3,500; and if the jury believe from the evi-
dence that said plaintiff did not, in fact, make such loan in
good faith to the Weinbergs, in other words, if the jury be-
lieve from the evidence that the said loan and pledge were
merely colorable, and either not made at all, or made with the
real purpose and intent on the part of said Engel and said
Weinbergs to hinder and delay the creditors of said Wein-
bergs, and to hinder and delay said G. Salomon & Bros. in
the collection of their demands against the Weinbergs, then
the plaintiff can not recover."

" If the jury believe from the evidence and the admissions
of the plaintiff that the goods in question were fraudulently
purchased from Gustav Salomon & Bros., and that such fraud-
ulent purchase was rescinded, and the notes and money re-
ceived thereon heretofore tendered back to the Weinbergs,
the fraudulent purchasers, and further believe from the evi-
dence that the plaintiff entered into an arrangement with the
Weinbergs to loan them money upon said goods as security,
for the purpose, and with the intent by the Weinbergs and
said plaintiff, of enabling the Weinbergs to put said goods be-
yond the reach of their creditors, and if said G. Salomon &
Bros., for the purpose of hindering and delaying them in the
prosecution of their demand against the Weinbergs, then the
transaction between the plaintiff and the Weinbergs is in law
fraudulent."

These instructions were erroneous in so far as they directed
the jury that if the loan and transfer of the warehouse
receipts were made with the purpose and intent on the part
of Engel and the Weinbergs to hinder and delay the creditors
of said Weinbergs in the collection of their demands against
the Weinbergs, the plaintiff could not recover, or that such
transaction between the plaintiff and the Weinbergs was, in
law, fraudulent.   Such a transaction is indeed fraudulent, but
only as to *creditors;* and as the appellees were not asserting
their rights as creditors, the proposition, even if correctly
stated, would have no place in the case.   As stated in the fifth

Engel v. Salomon.

instruction above quoted, it was necessarily misleading and confusing.   By both said instructions G. Salomon & Bros. are classed as creditors, and the demands which they had against the Weinbergs treated as the demands of creditors.   Such instructions would be appropriate if Salomon & Bros. had levied on the goods under an execution or attachment against Weinberg Bros., and appellant was seeking to enforce his title to them under the warehouse receipts.   Appellees were not in this case asserting that Weinbergs had a title to the tobacco, and that as against them it did not pass to appellant by the loan transaction; they were contending that the title which the Weinbergs got to the goods had been avoided by rescission, and that appellant took the goods under such circumstances that the rescission defeated his title.   They claimed as owners of the tobacco, not as creditors of the Weinbergs. They claimed plaintiff's title to the goods was bad because of his knowledge of the fraud by which they were obtained, but the instructions authorized the jury to treat his title as void, though he had no knowledge of said fraud, if they found from the evidence that he had knowledge of and participated in an entirely different and distinct fraud relating to the same goods. Appellant was made to suffer for one fraud without participation in or knowledge of it, because he had committed another and different fraud.   A creditor who can avoid a transfer of goods made to hinder or delay creditors, is one to whom the grantor is indebted on a demand sounding in damages as for a tort, or arising under a contract.   But such a creditor can not seize his debtor's property, either in the hands of the debtor himself or of his fraudulent grantee, merely because he has a demand against the debtor, which he may reduce to judgment. A creditor at large can not impeach the conveyance of his debtor on the ground of fraud.   The title of a fraudulent grantee can only be avoided by a creditor having some process upon which the property may be lawfully seized and by which it is made liable, either immediately or ultimately, to be appropriated in satisfaction of his debt.   Bump on Fraudulent Conveyance, 461, and cases there cited.   No one who has not obtained some legal hold upon it, can have any legal con-

cern with any disposition a debtor may make of his property.
Dewey v. Eckert, 62 Ill. 218.

It follows that the title of the fraudulent grantee who has
obtained property transferred with intent to hinder and delay
creditors, may be asserted against all persons except creditors
invested with a lien by contract or by process. Andrew et al.
v. Durant, 18 N. Y. 496; Graser v. Stillwagon, 25 N. Y. 315.

In the case first above cited, it is said that until the creditor
has his execution he is a mere stranger "and bound by the act
of the debtor as the debtor himself. Then does the fact that
he has obtained possession, being a creditor, give him the
right to resist the fraudulent transfer? Possession is, of
course, *prima facie* evidence of title, but that, standing alone,
is overcome by the claim of the purchaser, though his title is
fraudulent as against creditors." Eslow v. Mitchell, 26 Mich.
500; Helezim v. Drane, 10 Smedes & Marsh. 556.

Therefore if plaintiff below, himself, asserted that he knew
when he advanced the Weinbergs the money on the tobacco
and took the warehouse receipts as security, that they were
transferring the goods to him to hinder and delay their cred-
itors, and that he participated in their motive, he could assert
his title thus obtained against appellees as effectively in point
of law, as he could a title wholly untainted by any such fraud.
Enough has been said, it is believed, to demonstrate that the
propositions given to the jury in the instructions set out are
indefensible, and for the error in giving them judgment must
be reversed.

It is contended that appellees made no such tender to the·
Weinbergs of the notes and the money received from them as
to entitle them to rescind. It seems to be well established by
the cases cited in the brief of appellee's counsel, that a pur-
chaser from a fraudulent vendee, has no concern with that
question. The question of whether there has been a proper
or sufficient tender to the fraudulent vendee of what he deliv-
ered to the vendor, to warrant the latter in rescinding the
sale, is *res inter alios* when the suit is between the vendor
and a third person. Town of Springfort v. Teutonia Savings
Bank, 84 N. Y. 409; Kenney v. Keenan, 49 N. Y. 172; Bel-
lair v. Wood, 35 Mich. 443; Stevens v. Austin, 66 Metc. 557.

As this case must go back for another trial, we deem it proper to guard against any inference that may be drawn that facts tending to show that appellant knew that Weinbergs were transferring their goods with intent to hinder and delay their creditors, were not admissible.

We think all the facts and circumstances tending to show the relation of appellant to Weinbergs, and his knowledge of their business affairs and financial condition, competent to go to the jury. But we do not think that mere knowledge alone, that they were transferring their goods to delay and defraud their creditors, would charge appellant with notice that they purchased the goods fraudulently. "The true rule with respect to notice, is that the circumstances must be such as not only lead to, but direct the course of inquiry which, if pursued," will end in the discovery of the facts, with notice of which one is to be charged. Berdsall v. Russell, 29 N. Y. 220.

Other minor errors are assigned, some of which we regard as well taken, especially that as to the manner in which the contradiction of appellant by the witness Salomon with reference to a conversation occurring between them, was brought out.

As we think such errors unlikely to occur on another trial, we do not deem it necessary to discuss them.

The judgment must be reversed and remanded.

*Reversed and remanded.*