## Chicago City Railway Employees' Mutual Aid Association v. Margaret Hogan.

### Gen. No. 12,276.

1. CORPORATE EXISTENCE—*when estoppel to deny, exists.* An organization known by a name importing corporate existence, executing contracts in manner as a corporation executes contracts, is estopped to deny its corporate existence, especially where at the time of suit it has actually become a corporation.

2. ASSESSMENT—*when invalid.* An assessment which is provided to be made only when a particular contingency arises, is invalid where such contingency does not appear by the records of the organization.

3. FORFEITURE—*when will not be enforced against beneficiary.* A forfeiture of the benefits arising from membership in a fraternal organization will not be enforced unless it appear that the provisions of the by-laws pursuant to which such forfeiture is sought to be declared had been complied with.

4. TECHNICAL ERRORS—*when will not reverse.* Technical errors will not reverse a judgment which appears to do substantial justice between the parties.

Action of assumpsit. Appeal from the Circuit Court of Cook County; the Hon. ALBERT AKERS, Judge, presiding. Heard in this court at the March term, 1905. Affirmed. Opinion filed February 13, 1906.

**Statement by the Court.** December 7, 1894, appellant issued a certificate of membership and of insurance to Michael Hogan, then an employee of the Chicago City Railway Company, reading as follows:
"Number 994.

### THE CHICAGO CITY RAILWAY EMPLOYEES' MUTUAL AID ASSOCIATION.

This certificate is issued to Michael Hogan, member of the Chicago City Railway Employees' Mutual Aid Association, and the said association hereby promises to pay to Maggie Hogan, his mother, upon proof of death of the said

Hogan, provided he is a member in good standing at the time of his decease, the sum as provided for in article 1, section 2, of the constitution and by-laws of this association.

     (Signed)   Geo. O. Nagle,
               President.
         F. P. Morehouse,
(SEAL)           Secretary.

I accept this certificate on the conditions named in constitution and by-laws of this association."

July 3, 1897, Michael Hogan quit the employ of the railway company and went to Kansas City, Missouri. From there he wrote the following letter to appellant:

       "Kansas City, Mo., July 24, 1897.
Mr. F. P. Morehouse:
 In regard to that insurance policy on account of my being off the road does that prevent me from paying my assessments when there is such. In case of any assessment notify Mrs. John Edelman, 2516 Broadway, K. C. If I am not there she will pay the same. Her address is 2516 Broadway, Kansas City, Mo. There is coming to me out of the club room something like a $1. You can write and tell me how it stands.

           Yours,
     (Signed)  Mike Hogan,
           2516 Broadway,
           Kansas City, Mo."

This letter is endorsed: "Notify Mrs. John Edelman, 8/5–97 of assessment No. 20, C. L. Compton."

Mrs. Edelman testified that about two weeks later she received a letter from appellant, signed by "Mr. Morehouse to the best of my knowledge in the company's name," which said that they had received Hogan's letter and that he "was in good standing with the company and that there was nothing against him, and when there would be they would notify me." The letter to Mrs. Edelman was not produced, but its absence was accounted for.

In the fall of 1897 Michael Hogan went to Denver,

Colorado, where he died January 6, 1898, from tuberculosis.

Proofs of death were made to appellant. Upon its denial of all liability, suit was brought to recover upon the certificate. The general issue was filed to the declaration and the parties stipulated "that the defendant under the plea of the general issue may introduce in defense all matters properly admissible as matters of defense under that plea."

The cause was tried and the following verdict was returned: "We, the jury, find the issues for the plaintiff and assess her damages at $500, and interest $154.19." From the judgment rendered upon that verdict this appeal was perfected.

EDWARD C HIGGINS, for appellant.

WILLIAM K. LOWREY, for appellee.

MR. JUSTICE BALL delivered the opinion of the court.

Appellant contends that as it did not become a corporation until September 20, 1898, more than eight months after the death of Michael Hogan and the consequent maturity of this claim, it cannot be held liable therefor, unless it is shown that the corporation assumed this antecedent debt.

It appears that appellant was organized as a voluntary association in September, 1894, and has ever since carried on the business of life insurance; its membership being selected from the employees of the Chicago City Railway Company. In September, 1898, it became a corporation under and by virtue of the laws of this State. The same officers and directors who ran the voluntary organization became the officers and directors of the corporation; the membership remained the same; the name, the seal, the constitution and by-laws were continued unchanged; all the funds, books, records and other assets of the voluntary association were taken over by the corporation. In short, there was nothing done to show that the association had aban-

doned its voluntary character and had placed itself under the control of the State by applying for and accepting a charter as a corporation.

The position of appellant that by making this change it escaped liability for all death claims then ·matured, is not founded in equity and fair dealing, and therefore it is a defense not to be allowed, unless the strict rules of law compel its allowance.

We think appellant is estopped to deny that it was a corporation at the time it issued this certificate. Its name, as set forth in the certificate, imports that it is a corporation. It signed that contract by its president and by its secretary, and attested to the same with its seal. In the body of the contract the constitution and by-laws of appellant are referred to as fixing the conditions and the amount of a recovery.

In U. S. Express Co. v. Bedbury, 34 Ill., 459, it was held that where an association of persons who assumes a name which imports a corporate existence, and by it exercises corporate powers, they will not be heard to deny their corporate existence. In Fitzpatrick v. Rutter, 160 Ill., 282, the Switchmen's Mutual Aid Association of North America was sued as a corporation, upon a certificate similar to the one here in evidence, and judgment by default was taken against it. A creditor's bill was filed upon the judgment. The association interposed the defense that while it was a voluntary association, it had been sued at law as a corporation, and therefore the trial court had no jurisdiction over the person of the defendant association when it entered the judgment. The court answers this argument by saying: "But we think from an examination of the record, the Appellate Court and the trial court were justified in finding, from the evidence, that the association was a *de facto* corporation, and properly served with process. The Switchmen's Mutual Aid Association of North America had an organization, consisting of directors, a president, secretary and other officers. Its name implied a corporate body. It authenticated its acts by a common seal and exercised cor-

porate powers, and it is thus estopped from denying its corporate existence." See, also, Bacon Ben. Soc., secs. 40 and 41; Morawetz Corp., sec. 752; Williams v. Stevens Point L. Co., 72 Wis., 487; Bon Aqua I. Co. v. Standard F. I. Co., 34 W. Va., 764; Hamilton v. C., M. & St. P. Ry. Co., 144 Pa. St., 34; Independent Order, etc., v. Paine, 122 Ill., 625. The point is not well taken.

Appellant further contends that Michael Hogan at the time of his death was not in good standing in the association because he did not pay the August, 1897, assessment, amounting to the sum of fifty cents.

The constitution of the Association provides for the payment of death losses in manner following:

"Benefits — Mode of Payment.

Section 1. The amount payable on the death of a member of the association shall be the amount of one assessment, excepting when the assessment shall amount to a greater sum than five hundred dollars, then such amounts over and above said five hundred dollars shall be placed in a surplus account, and when the sum of five hundred dollars has thereby accumulated in the said surplus account, no assessment shall be levied until one death benefit shall have been paid from the accumulated funds in the surplus account."

It is further therein provided, that the board of directors " shall order the levy of all assessments when necessary;" and that it is the duty of the secretary " to levy all assessments when ordered " by that board. Under these provisions the board of directors cannot order an assessment until there is at least one death benefit unpaid and there is less than $500 in the surplus account. The mere sending out of a notice of assessment by the secretary will not cause a forfeiture of membership, nor will it take from the member his good standing, unless it was necessary to make that assessment, and there was not money enough in the surplus fund to pay the then matured death losses, and the board of directors had directed the secretary to make the assessment.

The records of the Association showed that at a regular monthly meeting of the board of directors held August 13, 1897, the following among other business was transacted: "A call for single assessment (50c.) from payroll due August 25th approved."

The August 1897 assessment as sent out by the secretary recites the death of three members whose beneficiaries are to be paid from the surplus fund, and also the death of one member to pay which an assessment of 50 cents on each pending certificate was demanded as due and payable within thirty days from the date of the notice.

But the record is bare of any evidence tending to show that at the time said assessment was ordered any unpaid death losses existed, or that the surplus fund was not ample to meet such death losses, if any there were. Until these facts were shown to exist the necessity for an assessment was not manifest; therefore evidence as to what the secretary did in demanding payment from the members in good standing was premature and subject to objection.

The Association and the deceased were each and both bound by the constitution and by-laws. The provisions thereof determined the rights and liabilities of the insured, and limited the powers of appellant. The defense interposed is based upon a forfeiture, and is therefore not to be allowed unless in creating that forfeiture appellant strictly followed those provisions. To compel a forfeiture appellant must show such compliance. It must offer evidence tending to prove that at the time the assessment was ordered there were matured death losses outstanding for which appellant was liable, to an amount greater than the sum of money then in the surplus account. Unless this be done, it is not shown that the assessment was "necessary." This is not placing upon appellant an unreasonable burden. It has or should have in its hands the required evidence enabling it easily to make a *prima facie* case in this regard.

In Bagley v. Grand Lodge, etc., 41 Ill. App., 411, the by-laws provided that upon notification from the grand lodge, "each subordinate lodge shall then make an assess-

ment of $1. upon each member holding a certificate," etc.
The proper notice from the grand lodge was read at a reg-
ular meeting of the subordinate lodge of which Bagley was
a member, but the subordinate lodge was not called upon to
pass upon the question of the making of the assessment.
The presiding officer assumed that it would do so, and stated
that the members would pay the assessment.  It was held
that the subordinate lodge did not make the assessment,
and that the assumption of the presiding officer that it
would do so did not make a valid assessment; and that in
neglecting to pay this alleged assessment Bagley did not
fail " to pay any assessment made by the subordinate lodge
of which he was a member."

In Bates v. Detroit Mutual Benefit Ass'n, 51 Mich., 587,
it was held that the insurance was not forfeited by neglect
to pay an assessment which was made by two persons who
claimed to be " managers " of the Association, and not
made by the secretary, as was prescribed by the articles and
by-laws.   The court said: " It is well settled that no for-
feiture can be established except for a violation of the pre-
cise conditions laid down."

In Shea v. Massachuetts Ben. Ass'n, 160 Mass., 289, it
was ruled on the trial that the burden was on the defendant
association to show that the mortuary call upon the insured
was properly and legally right.   Upon appeal this ruling
was sustained, the court saying: " In order to establish a
forfeiture of his membership, the first step was to show
a duly authorized assessment; and the second, to show that
it was not paid.   The facts relating to the validity of the
assessment were peculiarly within the defendant's knowl-
edge.   Unless, therefore, the plaintiff was in some way de-
barred from questioning the validity of the assessment, the
burden of establishing its validity clearly rested on the de-
dendant," etc.

In Jackson v. Roberts, 31 N. Y., 309, a suit upon mu-
tual insurance notes, it was held that it devolved upon the
plaintiff company to prove that the losses, which went to

make up the call, had occurred and had been allowed against the company, in order to justify a recovery.

It will be seen in the statement of facts that the only record of the ordering of this assessment is: " A call for a single assessment (50c.) from payroll due August 25th approved." Appellant must speak by its record in this regard. That record must show facts which render the assessment " necessary " or on trial such facts must appear in the evidence.

In American Ins. Co. v. Schmidt, 19 Iowa, 502, a suit upon mutual insurance notes, the court say: "Is the simple resolution sufficient evidence that the condition had occurred upon which defendant was liable to pay? It seems to us, upon principle and authority, not.

" Defendant's undertaking was not absolute, but conditional. Plaintiff has it in his power to show affirmatively the facts. It is imposing no impossible or unreasonable burden, to require that these facts should be shown in the first instance, or that the condition upon which defendant was to be required to pay had actually occurred. * * * The amount of these premium notes ought not to be called in unless the necessity therefor legally and properly arises. The due protection of a party thus conditionally liable would seem reasonably to demand that the other party should show the necessity, not by a mere declaration or resolution, but by proof that payment was legally required. This proof is easily made. The rule is calculated to well and sufficiently protect the rights of all, while the other opens a door to possible (not to say probable) fraud and injustice."

In Underwood v. The Iowa Legion of Honor, 66 Iowa, 134, suit was brought upon a certificate similar to the one here in question. The defense was that the insured in his lifetime neglected to pay an assessment levied upon him. It appeared that the assessment notice served on the insured was for the death of one Hess, and there was no evidence showing that the defendant ever made an assessment for that death. In this condition of the record the court say:

" Until such assessment was made, Underwood was entitled to all the rights and privileges of the order."

In Rosenberg, Light & Co. v. Washington Mutual F. I. Co., 87 Pa. St., 207, the insured, before the loss, had neglected to pay an assessment as called for by the company. They had agreed "to pay the said company such sum or sums of money and at such time or times as the board of managers of said Company, for the purposes of paying lossess by fire and the necessary expenses of said Company may require, within sixty days after notice and demand." The insured excused such negligence by asserting that the assessment was excessive. The offered proof showed that the net sum realized from this assessment was $4950.34; that the liability of the company at the time it was ordered was $2305.48; and that the difference of $2644.86 was levied in anticipation of future losses that might occur. This evidence was ruled out. Upon appeal the court said: " That testimony should have been submitted to the jury, with instructions that if they found the addition to the sum actually needed was levied by the managers for the purpose of accumulating a fund for the payment of future losses, they exceeded their authority, and no member was bound to pay the assessment."

In American Mutual Aid Ass'n v. Helburn, 85 Ky., 1, an action was brought upon a certificate similar to the one now under consideration. The answer set up that " three assessments of $1.80 each were duly made by defendant against, and due notice thereof given to Samuel Helburn, in accordance with the terms of said charter, upon the deaths of Mr. Moran, who died December 7, 1883, and Susan W. Harrison, who died December 9, 1883, and E. T. Hamilton, who died December 11, 1883, who died members of said Society; and payment of said assessments, which amounted to $5.40, was by it demanded of said Samuel Helburn, who failed and refused to pay the same," etc. A demurrer to this answer was sustained and judgment was entered for plaintiff. Upon appeal the court found from an inspection of the charter that assessments must be made

# 456 APPELLATE COURTS OF ILLINOIS.

by the board of directors, or by an executive committee when authorized so to do by the directors, or the directors might order the death losses to be paid out of the permanent fund of the society. The court say: " The question then arises, before a member can be compelled to pay an assessment against him, and forfeit his membership and benefits arising therefrom by reason of his failure to pay the assessment made against him, should it not appear affirmatively that the assessment was legally made, to-wit, by the board of directors themselves or by an executive committee duly appointed by them to make the assessment on the members of the society ? " After citing and commenting upon certain authorities, the court further say: " Thus, we see that in making assessments by the appellant upon its members, it does not act in a judicial, but in a ministerial capacity; therefore, no presumption can arise in favor of the  regularity or legality of its assessments; that the appellant's board of directors or an executive committee appointed by them are the only persons authorized by appellants' charter to make assessments against its surviving members to pay the benefits due the representatives of its deceased members; that the deceased member of the society should have died and that his representative was entitled to a benefit arising from his death; and that an assessment upon all of the surviving members was actually made by the board of directors or an executive committee appointed by them for the purpose of paying said assessment, are conditions precedent to the right of the appellant to demand payment of an assessment from any of its members. And they are not bound to pay any assessment until these things occur, nor do they forfeit their membership by reason of their failure to pay such assessments unless these things have occurred. And when the society relies upon the failure of his membership and benefits under its charter, it must show affirmatively that the assessment was made in the manner indicated, otherwise he cannot be said to be in default."

Appellant cites several cases in which the contrary doc-

trine is announced; but from an extended examination we believe that the current of authority is as above indicated. We are fully convinced that the view thus taken accords with equity and fair dealing.

The instructions given at the request of appellee, to which objections are made by appellant, fairly state the law of this case as we have found it, and are therefore not erroneous.

The modifications made by the trial judge in instructions 12 and 13, as offered by appellant, were proper.

If the trial court had excluded the evidence objected to by appellant and had admitted all evidence offered by it, appellant would not have been entitled to a verdict upon the whole record. The result reached in this case is just. Where substantial justice has been done, we will not reverse for technical errors. Newkirk v. Cone, 18 Ill., 454; Wilson v. People, 94 Ill., 327; City of Chicago v. Jackson, 196 Ill., 571.

The view we have taken of this case renders the discussion of the other contentions of appellant unnecessary.

The judgment of the Circuit Court is affirmed.

*Affirmed.*