# CHARLESTON.

## CORE *v.* OHIO RIVER R'D CO.

Submitted June 10, 1893—Decided December 6, 1893.

1. REVERSAL OF JUDGMENT.

   If the defendant, after the court has overruled its motion to exclude the plaintiff's evidence on the ground of insufficiency, proceeds with its defence and introduces its evidence, this Court will disregard such motion and will not reverse the judgment, unless it appears that the whole evidence is insufficient to justify the verdict of the jury. (p. 463.)

2. RAILROAD COMPANIES—EMPLOYER AND EMPLOYE—MASTER AND SERVANT.

   Two servants of a common master may occupy a threefold relation towards each other, entirely dependant on the duties imposed upon them by their employment, to wit, that of (1) superior or master, (2) co-ordinate or fellow servant, (3) inferior or servant. (p. 459.)

3. DAMAGES—RAILROAD COMPANIES—EMPLOYER AND EMPLOYE—
MASTER AND SERVANT.

Where an engineer, with authority so to do, places an inex-
perienced and incompetent fireman in charge of an engine, the
company is liable for unavoidable injuries that result to other
employes by such fireman's unskillful management of the engine,
for the reason that it is a breach of the duty the company owes
to its employes to exercise ordinary care in providing and retain-
ing competent servants. (p. 469.)

4. DAMAGES—RAILROAD COMPANIES—EMPLOYER AND EMPLOYE—
MASTER AND SERVANT.

When an action is founded on the incompetency of a fireman
temporarily in charge of an engine, the plaintiff must prove (1)
that the fireman was so inexperienced in the management of an
engine that it was not an exercise of ordinary care to place him in
charge thereof, he not being reasonably safe and fit for the em-
ployment; (2) that he was guilty of mismanagement of the en-
gine by reason of his inexperience and unskillfulness; (3) that such
mismanagement was the proximate cause of the plaintiff's injury.
(p. 472.)

V. B. ARCHER for plaintiff in error:

I.—*Risks assumed.*—27 W. Va. 285 ; 29 W. Va. 107.

II.—*Engineer and brakeman are fellow servants.*—109 U. S.
478; McKinney Fel. Serv. § 129, note 5 ; 17 Am. &
Eng. R. Cases 501, and note 514 ; 8 Am. & Eng. R.
Cases 133 ; 55 Mich. 57 ; 55 Tex. 110.

III.—*Specific charge of negligence must be proven as alleged.*—
15 W. Va. 628.

IV.—*Expert evidence— Usual manner of performing an act.*—
91 U. S. 469–470 ; 23 Am. & Eng. R. Cases 342, and
note 346 ; 14 S. E. Rep. 996.

V.—*Carelessness of servant of itself not sufficient.*—59 N. Y.
356; Wood's Mas. and Serv. (1st Ed.) § 419–420.

VI.— *When conductor held vice principal : Negligence of in
performance of his duties.*—15 S. E. Rep. 162 ; 28 W. Va.
610 ; 112 U. S. 377; 83 Ky. 675 ; 44 Ohio St. 201; 78
Va. 745; 84 Va. 713 ; 86 Va. 165 ; 25 S. C. 128; 21
Pac. Rep. 32 (1889).

VII.—*Duties of engineer are assignable.*—Bishop Non-Con.
Law §§ 658, 659, 660 ; 105 N. Y. 159 ; McKin. Fel.
Serv. § 23.

VIII.—*Negligence in hiring or retaining servant must be proven.*
—Wood's Mas. and Serv. (1st Ed.) §§ 419, 420 ; McKin.
Fel. Serv. § 89; Wood's Mas. Serv. (2d Ed.) § 819.

IX.—*Doctrine of fellow servants.*—Bish. Non-Con. Law §§ 10–11.

X.—*Liability of railroad company for negligence of engineer.*—47 Mo. 567; 46 Ill. 99 ; 79 Mo. 362.

XI.—*Fireman acting as engineer.*—49 Mich. 197; 84 Mich. 281.

XII.—*Negligence in retention of servants.*—7 Am. & Eng. Enc. Law 848, § 3 and notes.

XIII.—*Positive and negative evidence—Instructions as to.*—Sack. Inst. to Juries (2d Ed.) 42; 30 Ala. 672; 14 Ga. 55; 45 Am. & Eng. R. Cases 211; 6 Am. & Eng. R. Cases 583.

GEORGE LOOMIS for defendant in error cited 17 W. Va. 190; 34 W. Va. 155.

DENT, JUDGE:

Suit was instituted in the Circuit Court of Wood county by Ellis T. Core, plaintiff, against the Ohio River Railroad Company claiming damages for an injury received while in the employ of the defendant as a brakeman. The defendant appeared and demurred to the declaration. The demurrer was overruled; and defendant pleaded not guilty. A trial was had, and a judgment was rendered in favor of plaintiff on the 9th day of January, 1892, for the sum of one thousand and six hundred dollars. Defendant obtained a writ of error to this Court and now relies on the following assignment of errors, to wit; "First. The court erred in overruling defendant's demurrer to plaintiff's declaration. Second. The court erred in permitting the several questions to be asked, and the answers thereto to be given in evidence to the jury, as set out in defendant's bill of exceptions No. 1. Third. The court erred in overruling defendant's motion to exclude the plaintiff's evidence, and to direct a verdict for the defendant, as set out in bill of exceptions No. 2. Fourth. The court erred in overruling defendant's motion to set aside the verdict for the reason set out in bill of exceptions No. 3. Fifth. The court erred in overruling defendant's motion to set aside the verdict of the jury upon the grounds set out in bill of exceptions No. 4. Sixth.

The court erred in refusing to instruct the jury as set forth in bill of exceptions No. 5. Seventh. The court erred in refusing to instruct the jury as set forth in bill of exceptions No. 6. Eight. The court erred in refusing to instruct the jury as set forth in bill of exceptions No. 7."

1. The demurrer to the declaration is without foundation, and it requires a considerable stretch of imagination to give its language the construction claimed by the defendant's counsel, as it seems to me to plainly charge that an incompetent fireman was discharging the duties usually devolving on a skillful engineer, and that thereby he had control of the movements of the train at the time of the accident, and that his unskillfulness was the cause thereof. The context shows that there was no pretense nor attempt to charge that he was acting in lieu of the conductor. The demurrer was properly overruled.

2. The following questions and answers were objected to by defendant: "Question. Mr. Core, I wish you would state to the court and jury where Raven Rock is situated, and whether that is a station on this road. Where is it situated as between St. Mary's and Clarington? Answer. There is a station there that is called Raven Rock, situated just a short distance above St. Mary's. I do not know the exact distance. Question. State whether you received any directions from the conductor at Raven Rock to stop the train as you were going towards St. Mary's; and, if so, what the directions were. * * * Question. State what instructions, if any, you received at that point from the conductor about stopping the train, or signaling to stop the train. Answer. Well, the conductor gave me orders to signal the train to stop at Raven Rock, so that the engineer could go to his post; and I went out on top the train, and gave him the signal to stop, and got no answer, and I set some brakes—three or four brakes—and still got no answer. I gave him a second signal with my lantern, and got no answer; and I went back to the conductor, and told him I could get no answer from the engine. * * * The Court. I will allow you to prove the instructions of the conductor—the man who had charge of this train—to this man. Question. Well, what were they? Answer.

Well, he told me to have the train stopped, or to stop the train—to give them the signal to stop—which I did. Question. State whether you communicated that fact to the conductor, that you got no response back from the engineer. * * * Question. Well, what did he say in that connection about stopping at St. Mary's? The Court. What instructions did he give you about stopping at St. Mary's? Answer. The instructions he gave me about stopping at St. Mary's was to have the train stopped there at the south end of the switch, and back into the switch—was all the instructions that was given to me about St. Mary's—to back in and allow the other train to pull up alongside of us, and to pull back on the main track, and let the train going north pass us. That was the only instruction given about St. Mary's." The defendant objects to this evidence, because it shows that the fireman was acting as engineer before the train reached the place of the accident. This evidence was not proper to show any negligence on the part of the conductor or engineer, but it was admissible on the question of competency or incompetency of the fireman to discharge the duties of the engineer. The brakeman certainly had the right to tell what instructions the conductor gave him as to what was to be done at St. Mary's, the place of the accident. And the following queston, propounded to the witness, T. B. Ayers, was answered by him: "Question. Well, state whether or not it is not usual, when cars come together, that they come along so gently as not to produce a jar. Answer. Yes, sir; there is cars come together that a man on the front end would not feel the jar from the hind end." Defendant objects to the foregoing, because it is an effort to prove a custom, and is expert testimony from one not an expert. I can not see how this question could effect the issue either way, or how the defendant can be greatly prejudiced by it. Any member of the jury, if he had ever been about a railroad, could have testified the same way, and could have also testified that "there are cars come together that a man on the front end would feel the jar from the hind end." Matters in the knowledge of all men are outside the pale of proof, especially if of everyday occurrence. Where there is perfection in the track and

machinery and the men handling it, cars might always be brought together without a jar, but such perfection as this is hardly practicable of attainment in all places and under all circumstances. The question was leading, and the witness was at first led into an answer he did not intend ; but he afterwards modified it in such a way as to make his meaning clear. Awkwardly asked, awkwardly answered, and not much harm done.

In the sixth, seventh, and eighth assignments of error defendant complains of the court's refusal to give the following three instructions, to wit:

(1) "The jury are further instructed, that if they believe from the evidence that the engineer, Charles Miller, was on the locomotive, and that E. C. Hogan, the fireman was handling the locomotive under the direction of the said Charles Miller, that in such case the locomotive was under the control of the engineer, and the plaintiff can not recover in this suit, although the jury may believe from the evidence that the engineer was negligent in directing said fireman in the management of said locomotive, and that such negligence caused the plaintiff's injury."

(2) "The jury are further instructed, as a matter of law, that if other things are equal, affirmative testimony is in general entitled to more weight than negative testimony ; and if you believe from the evidence that the witnesses Charles Miller and E. C. Hogan are credible witnesses, and you find that they have sworn that they were both on the defendant's locomotive at the time the plaintiff was injured, and that the engineer was in control of said locomotive, then this is what is known as 'affirmative testimony,' and is for that reason entitled to more weight than negative testimony ; and if you further believe from the evidence that the witnesses Ellis T. Core, T. B. Ayers and J. W. Taggart are credible witnesses, and you find that they have sworn that they were also present and giving signals and attempting to make the coupling at the time of the accident, and did not know whether or not the engineer, Charles Miller, was on the locomotive, and in control thereof, then their evidence on this point is what is known as 'negative evidence,' and for that reason is entitled to less

weight than the testimony of the witnesses Charles Miller and E. C. Hogan upon the same point, provided you further believe from the evidence that the witnesses Ellis T. Core, T. B. Ayers, James Taggart, Charles Miller and E. C. Hogan are otherwise entitled to equal credit, and that they have been corroborated to the same extent."

"(3) The jury are further instructed that while under our law, a party to a suit is a competent witness, and it allows him to testify in his own behalf, still the jury are the judges of the credibility and weight of such testimony; and in this case, in determining the weight and credibility of the evidence of the plaintiff, the fact that he is interested in the result of the suit, if it so appears from the evidence, may be taken into account by the jury, and they may give his testimony only such weight as they think it fairly entitled to under all the circumstances of the case, and in view of the interest of the plaintiff in the result of this suit."

The first instruction is bad, because it assumes the fact that the locomotive was under the control of the engineer if they believe the other two facts stated; and, ignoring all the other evidence in the case, instructs the jury to find for the defendant. The fireman might have been, in the belief of the jury, so utterly incompetent that the locomotive was not under the control of any one; and if the negligence of the engineer in permitting such a person even under his direction, to attempt to handle a locomotive at a critical juncture, when skill and experience are required, could be traced back to the company in any way, it would be liable for the injury occasioned by such negligence. In the case of *Railway Co.* v. *Collarn*, 5 Am. & Eng. R. Cas. 555, it was held that a railroad company which permits an engineer to place an engine in the hands of a careless and incompetent fireman is guilty of negligence, and liable for damages to a conductor injured by reason of such negligence. See also, *Riley* v. *Railway Co.*, 27 W. Va. 145; *Storrs* v. *Feick*, 24 W. Va. 606.

The second instruction violates the rule that instructions should be clear, accurate, concise, and not argumentative, confusing or unintelligible to the jury. *State* v. *Greer*, 22 W. Va. 800; *Dickeschied* v. *Bank*, 28 W. Va. 340.

The third instruction was not justified by the plaintiff's evidence, which appears to have been straight forward, sincere and truthful, without any attempt on his part to color it in his own behalf. Neither is he contradicted in any material point by any witness, but is fully corroborated by all of them and the circumstances. The instructions seems to have been offered for the purpose of disparaging and prejudicing him in the minds of the jury without just cause, and, if given, could have only had the effect to have produced an opposite impression from that intended, and would have prejudiced instead of benefited the defendant's cause, as intelligent jurors are generally very quick to perceive the unjust attempts of counsel to bias their opinions by instructions aimed at the reputation for truth and veracity of the party against whom they are contending, not justified by such party's conduct or testimony. Instructions must be pertinent, and based on the evidence. *Moore v. Douglass*, 14 W. Va. 708.

In its third assignment of error the defendant insists that the court erred in overruling its motion to exclude the plaintiff's evidence, and direct a verdict for the defendant. If error, this could not be taken advantage of in this Court, if, when the motion was made and overruled, the defendant instead of at once closing the case proceeded to re-open it and introduce his own evidence. This motion is not founded on a variance between the allegations and the proofs, not because of incompetent testimony, but upon the insufficiency of the plaintiff's evidence by reason of some omission or failure of proof on his part; and this omission may be supplied by the evidence of the defendant, and it would be a vain thing for this Court to sustain the motion to exclude the plaintiff's evidence for insufficiency alone, if the whole evidence taken together should establish the right of plaintiff to recover, as it would only be sending him back to go through the farce of another trial; and, if the whole evidence shows the case is for the defendant, and the plaintiff is not entitled to recover, then it would make no difference whether the court acted on the motion to exclude or the motion to set aside the verdict, the result would be the same. In either case the remedy would be to award a

new trial. This practice seems to prevail in the federal courts, and in the case af *Railway Co.* v. *Cummings*, 106 U. S. 700 (1 Sup. Ct. 493) the Supreme Court of the United States held:

"Although the refusal at the close of the testimony for the plaintiff to direct a verdict for the defendants would justify a reversal of a judgment against them, yet, if they proceed with their defence, and introduce testimony which is not in the record, the judgment on the verdict, which the jury, under proper instructions, find against them, will not be reversed on account of that refusal."

Chief Justice WAITE says in his opinion : "The present case comes within this rule. The evidence introduced on the part of the company is not in the bill of exceptions, and the court was not asked to instruct the jury to find for the defendant on the whole case. Under such circumstances it must be presumed, in the absence of anything to the contrary, that when the case was closed on both sides there was enough in the testimony to make it proper to leave the issue to be settled by the jury. In this we are not to be understood as saying that the instruction ought to have been given when it was asked."

In that case the defendant omitted its testimony from the record, and endeavored in the Supreme Court to rely on its motion in the court below to direct a verdict for it, because of the insufficiency of the plaintiff's testimony; but the Supreme Court refused to reverse the lower court, although it erred, for the reason that the defendant's evidence might have supplied the insufficiency of the plaintiff's, and rendered the case a proper one for submission to the jury. In this case the defendant's evidence is in the record, and for the same reasons that actuated that court this Court will disregard the motion to exclude as waived by the defendant's proceeding with the case, and consider the whole evidence, either on a motion to set aside the verdict or in arrest of judgment, and will not reverse the judgment unless the evidence as a whole is insufficient to justify the finding of the jury. Relating to motions to exclude, see the case of *Carrico* v. *Railway Co.*, 35 W. Va. 389 (14 S. E. Rep. 12) ; *Bon Aqua Imp. Co.* v. *Standard Fire Ins. Co.*, 34 W. Va. 766 (12 S. E. Rep. 771).

The fourth assignment of error is based on the special verdict in answer to certain questions of fact propounded by the defendant under chapter 131, § 5, Warth's Code, being the same as in the present Code. The questions were twenty three in number, and the answers given by the jury may be summed up as follows, to-wit: The plaintiff was engaged as a freight brakeman. His employment was somewhat hazardous. He was employed under Conductor Taggart, who had control of and was operating the train. The employes were five in number, all under the control of the conductor. The conductor directed the plaintiff to make the coupling, and was two or three car lengths from him when he was injured, and Brakeman Ayers was on the second or third car from engine. The jury disagreed as to whether Charles Miller was on the engine, directing the fireman as to its management. Fireman E. C. Hogan had very little experience in managing locomotives, and was not competent to handle a locomotive while making couplings. At the time of the accident both plaintiff and engineer were subject to the orders of the conductor, but the engineer was off duty. The cause of the accident was the negligence of the conductor.

The defendant insists, "if the jury could not agree as to whether or not the engineer was on the locomotive, under the law of master and servant the general verdict of guilty ought not to stand." The view, undoubtedly, the jury took of the case was that a wholly incompetent fireman was managing the engine with the permission, express or implied, so to do from the conductor, and by reason of his ignorance and unskillfulness caused this accident; that the conductor had authority from the company to forbid the fireman managing the engine, and to require the regular engineer to manage it; and therefore it made no difference in this case whether the fireman was acting under the direction of the engineer or not. An accident having been occasioned by his unskillfulness while engaged about its business by its permission, through its conductor, the defendant was liable; it amounting to the same thing as if the company knowing the unskillfulness of the fireman had temporarily hired him and placed him in charge of the engine.

The provision of the statute is that, "where any such separate verdict or special finding shall be inconsistent with the general verdict the former shall control the latter and the court shall give judgment accordingly." The jury manifested decided intelligence in their findings. The large number of questions appear to have been carefully prepared for the purpose of entrapping them into inconsistent answers, and thus rendering their general verdict a nullity; but, if such was the intention they seem to have divined it, and neatly foiled the questioner, as their findings are in no wise inconsistent, even though they may be unsupported by the evidence and the law governing the same.

The fifth and remaining assignment of error being for the refusal of the court to set aside the verdict as contrary to the law and evidence raises the real merits of this controversy. On this question the Court is limited to the inquiry as to whether the verdict or the jury is plainly unwarranted by the evidence under the law applicable thereto. If not, the judgment must be affirmed. The facts established by the plaintiff's evidence were as follows, to wit:

A freight train belonging to the defendant was passing south over the defendant's road, manned by James W. Taggart, conductor, in charge of train; Charles Miller, engineer; Ed. C. Hogan, fireman; Ellis T. Core (plaintiff) and T. B. Ayers, brakeman. At Clarington, the engineer, complaining of illness, left the engine in charge of the fireman and lay down in the caboose. The train proceeded about thirty miles, to Raven Rock, a point near St. Mary's, where the conductor told the plaintiff to signal the fireman to stop the train, so that the engineer could get on the engine. The plaintiff did so, but, getting no response from the engine, informed the conducter, who instructed the plaintiff to let the train run on to St. Mary's, where they had orders to stop, and there to back the train in at the south end of the siding, so as to let the north-bound passenger train pass them. When the south end of the siding at St. Mary's was reached, and the train stopped, the engineer got off the caboose and started towards the engine, and the plaintiff got off and opened the switch, and gave

the signal to back. There were some cars on the siding, which would make the train too long for it, and to let the passenger train by it was necessary to fasten these cars to the train already composed of about twenty cars, and back them as the rear end of the train backed out the north end of the siding until the engine was safe in the siding, and then, after the passenger train passed by the south switch, to run the rear end of the train back so the passenger train could pass it. The plaintiff with the assistance of the other brakeman, who was stationed on top of the train about two car lengths from the engine, made the first coupling. The conductor then came out of the caboose, and took his station about three car lengths from plaintiff. Plaintiff gave the signals. They were repeated by the conductor to the front brakeman, who transmitted them to the engine. It was about 9 o'clock at night, quite dark, and the signals were made with lanterns. Plaintiff, standing close to the car to be coupled to the train, signaled for the train to back. The train moved back slowly until within six feet of the car, and plaintiff signaled to slow up, and reached forward and caught hold of the link in the end of the moving train, and raised it for the purpose of inserting it in the bumper of the other car, when the train or hind car came back with a sudden movement, and caught his hand between the bumpers, and mashed it off. He immediately cried out, the train was moved forward, and his hand was freed. The plaintiff had been working as a brakeman for about six weeks, before which he was in the shops. The conductor testified that the fireman, he thought, had not been known and recognized as a regular engineer capable of running engines at that time. For the present the defendant's evidence is omitted.

Under his declaration the plaintiff was bound to prove by competent testimony : (1) That the fireman was unskillful, unlearned, and incompetent to manage an engine. (2) That he did manage it in an ignorant and unskillful manner; not making it quite so strong as his declaration, "in a violent, negligent, careless, rash, unskillful, and ignorant manner;" and that this mismanagement was the cause of the accident. (3) That the defendant knew, or

ought to have known, by the exercise of reasonable care and diligence, that the fireman was wholly unskillful, unlearned, and incompetent to manage an engine. (4) That if the engineer was present and directing the management of the engine by the fireman, and there was such mistake in such management as to cause the accident, it was wholly due to the unskillfulness of the fireman alone, and not due to the misdirection of the engineer. (5) That the plaintiff did not know that the fireman was managing the engine, and could not have known it by the use of ordinary care, and avoided the accident. (6) That the defendant permitted, either expressly or impliedly, the fireman to manage the engine.

As to the last proposition the jury found that the conductor was guilty of negligence in that he permitted the fireman to manage the engine., This appears to be the conclusion they arrived at, both from their special verdict and the argument of the plaintiff's counsel. To arrive at this conclusion the jury must have been erroneously instructed in the law, as the conductor does not appear to have neglected his duties in any way at the time of the accident. In the case of *Railway Co. v. Ross*, 112 U. S. 377 (5 Sup. Ct. 184) Justice FIELD, in delivering the opinion of the court, and commenting on the duties of a conductor, says:

"We know from the manner in which railways are operated, that subject to the general rules and orders of the directors of the companies, the conductor has entire control and management of the train to which he is assigned. He directs when it shall start, at what speed it shall run, at what stations it shall stop, and for what length of time, and everything essential to its successful movements; and all persons employed on it are subject to his orders."

This language, being general, is liable to be misunderstood, and hence is misleading, especially the closing sentence, that "all persons employed on it are subject to his orders," this should be limited to mean as to the movements of the train. He adds further: "In no proper sense of the term is he a fellow servant with the fireman, the brakeman, the porters, and the engineer." This is

also misleading, because not limited to the nature of the duty or employment he is engaged in discharging.

The employes of a railroad company oftentimes occupy not only a dual, but a threefold, relation towards each other, according to the duties they are called upon or delegated to perform, to wit: that of superior or master, co-ordinate or fellow servant, inferior or servant. For instance, in running the train, the conductor is the superior of the engineer, and in that particular he represents the master; in the separate management of the engine and the train from the engine back they are co-ordinate or fellow servants, each being independent in his own sphere; and in permitting the fireman or other person to manage the engine in his stead the engineer is the superior of the conductor, discharging a nonassignable duty, delegated to him by the master or company. As an illustration of and to support the last proposition I refer to the case of *Harper* v. *Railroad Co.,* 47 Mo. 567, in which it was held that when an engineer placed a fireman in charge of the engine, acting under authority, either express or implied, his act in so doing was the act of the company, and that the company was liable to the conductor for injuries sustained by reason of the incompetency of such fireman.

For authorities sustaining the second, see 7 Amer. & Eng. Enc. Law. p. 821; and for authorities to sustain the third, the case of *Railway Co.* v. *Ross,* above referred to, and also the case of *Madden* v. *Railroad Co.,* 28 W. Va. 610, approved in the case of *Daniel's Adm'r* v. *Railway Co.,* 36 W. Va. 397 (15 S. E. Rep. 162). The principles established by these citations are that where the injury is caused by an employe acting in the discharge of a duty that renders him inferior to or co-ordinate with the injured employe the master or company is not liable, but where he acts in a superior position the master is liable. These superior duties that the law devolves upon the master, and for the proper discharge by his delegated agents, servants, and employes he has been held responsible, have been established by the citations above to be as follows: (1) To exercise reasonable care in providing and keeping in repair suitable machinery, and all necessary appliances, including

a safe place to labor; (2) to exercise a like care to provide and retain suitable servants for each department of service; (3) to establish, conform to, and enforce compliance with proper rules and regulations.

In this case the conductor had nothing to do with the employment of the engineer or fireman. They were employed as suitable persons for and placed in their respective positions by an entirely different agent of the company, and he was given no authority over them outside of the control of the movements of the train. In all other respects they were independent of him. It was imposed upon the engineer as a duty by his master to make a skilled engineer of the fireman, and the conductor had no right to interfere and say when and how that duty should be performed, even if he was competent to do so. At least there is no evidence in this case tending to show such authority, and in the presence of such a painful vacuum we are compelled to fall back on judicial notice of the manner in which the great railways of the country are managed, *Slater* v. *Jewett*, 84 N. Y. 61. The conductor is not required to be a skilled engineer, or to know anything about the management of an engine. This is the engineer's co-ordinate duty, and the fireman is his assistant, and under his control. In training and making a skilled engineer out of the fireman he acts in his delegated capacity, and is the superior or master therein to all the other employes, conductor included. The conductor could order him out of the caboose, but on the engine he was entire master of the situation, and, within the sphere of his employment, as independent as the prince in his palace, or the poor man in his hovel. The jury, therefore, erred in its special finding that the conductor was guilty of negligence in permitting the fireman to manage the engine.

This, however, is not a good reason for setting aside their general verdict, as there is no allegation in the declaration that charges the conductor with negligence, but the charge is a general one against the defendant, without pointing out the special servant in fault. The only trouble with them is they put the saddle on the wrong horse. If there was any negligence in placing the fireman in management

of the engine, it was the engineer that was at fault, and in doing so he acted in discharge of a superior duty, and his act was the act of his master, the company, and his knowledge as to the competency or incompetency of the fireman was the knowledge of the company. We must therefore answer the sixth proposition stated above, as to proof required, in the affirmative, to wit, that the defendant permitted the fireman to manage the engine. Such permission, as shown by the references above, was a temporary employment for this purpose.

In the case of *Thompson* v. *Railway Co.*, 84 Mich. 281 (47 N. W. Rep. 584) it was held "that it is not necessarily negligent to allow a fireman to run the engine. * * * It is customary, and sometimes necessary; and it is the way in which firemen are educated to be engineers." And the court says further: "Whether it was negligent to allow this particular fireman to run the engine or not must depend on whether he had such experience in the work as to make him reasonably safe and fit for it."

And this brings us in proper order to inquire, first, whether the fireman was unskilled, unlearned, and incompetent. The evidence introduced by the plaintiff to prove this allegation was, the failure of the fireman to respond to the signals at Raven's Rock; the testimony of the conductor, above quoted, that "the fireman was not known and recognized to be a skilled engineer;" and the accident itself. This proof is wholly insufficient. The proper inquiry is contained in the Thompson Case, last quoted, "whether he had such experience in the work as to make him reasonably safe and fit for it;" not whether he was known and recognized as a skilled engineer. The mere fact that he failed to notice and answer signals when he was under instruction to run to St. Mary's counts for very little, when no doubt the signals were unexpected, and he was watching the track in front of the engine, the place dangers are usually encountered. And it is to be presumed, although the evidence is silent on the subject, that the front brakeman was on the engine, acting as fireman, and it was his duty to watch the rear end of the train for signals from that direction, and his fault that they were

not seen and communicated to the fireman. And the fact that the accident happened is not sufficient to show that the fireman had not had such experience in the work as to make him reasonably safe and fit for it, much less to show that he was "unskilled, unlearned, and incompetent." But the accident must be traced to some unskillful act of his, as the proximate cause of the injury; and that brings us to the second proposition, to wit: Did he manage the engine in an ignorant and unskillful manner, and was this mismanagement the proximate cause of the accident? The plaintiff must prove this, and the only evidence to sustain it is the manner of the accident. If the accident was occasioned by the negligence, and not the incompetency, of the fireman, the defendant is not liable. The company can not be required to answer for the negligent act of a competent fellow servant. That is one of the ordinary risks assumed by the plaintiff in his contract of service. "The general rule of law is now firmly established that one who enters the service of another takes upon himself the ordinary risks of the negligent acts of his fellow servants in the course of the employment." *Randall* v. *Railroad Co.*, 109 U. S. 478 (3 Sup. Ct. 322); *Rodman* v. *Railroad Co.* (20 N. W. Rep. 788); *Railroad Co.* v. *Myers*, 55 Tex. 110; *Greenwald* v. *Railway Co.*, 49 Mich. 197 (13 N. W. Rep. 513).

Admitting that the accident was caused by the act of the fireman, can we, from the evidence, say it was caused by his incompetency, or, being competent, his negligence? As heretofore shown, there is no proof of incompetency; hence we are bound to assume that it was an act of negligence, independent of the question of skill. But was this mismanagement the cause of the accident? The only answer to this is that the car came back with an accelerated speed for six feet. But the evidence does not enlighten us as to what caused the acceleration. The curvature, grade, and condition of the track, the length, heaviness, and friction of the cars and slack in the train, and loosening of the brakes, may all have been potent forces in the matter, independent of the pressure of the engine. The dark night and the plaintiff's inexperience and unskillfulness may have contributed to it. There is no proof that

the fireman did anything wrong, but we are left to infer this from the manner of the accident.

In the case of *Kersey* v. *Railroad Co.*, 79 Mo. 362, it was held that "it is not enough that one servant is injured while an incompetent servant, known to the master to be such, is engaged in one common employment." "But the master can not be held liable unless the incompetent servant was guilty of some negligence or misconduct directly contributing to produce the injury." The evidence on this subject—that is, the manner of the accident—tends as much to prove the proximate cause of the accident was the plaintiff's own inexperience and unskillfulness as to prove the incompetency of the fireman.

The plaintiff had only been employed as a brakeman about six weeks. When he went to couple the car to the train he says the train "came back within three or four feet of the car I was going to couple very steady.  *  *  *  I reached down and took hold of the link, and as I took hold of the link the cars came back with a crash, and caught me, and I hallooed. After some few minutes the train was pulled apart, and I got loose." Plaintiff does not testify that the impact of the train had any effect on the car, but the car appears to have stopped the train still. A train of twenty cars with an engine attached, moving with great speed, is not an irresistible force; neither is a single car an immovable object. But if a single car is able to stop immediately twenty such cars with a powerful and heavy locomotive pressing in the rear, reason must convince us at once that the engine was not exerting much impelling force, or that the train was not moving at any great speed, although the rear car, on account of slack in the train, might continue to move after the engine stopped. The circumstances and the evidence leave the question in doubt as to where the fault lay.

The third proposition, calling for proof on the part of the plaintiff, falls with the other two, for, if the plaintiff has failed to prove that the fireman was incompetent, much more has he failed to establish that the defendant had notice of incompetency which does not exist in the light of the evidence.

The fourth proposition is not in accordance with plaintiff's theory of the case, and therefore there is no evidence whatever on the subject.

The fifth presents a question of contributory negligence.

If the plaintiff knew of the incompetency of the fireman, and that he was in charge of the engine, or ought to have known it by the exercise of ordinary care, and he went on with his work without ascertaining the fact, he is guilty of contributory negligence, and can not recover. The plaintiff testifies that he knew that the fireman had been in charge of the engine immediately before the accident, but he did not know it just at the time of the accident. When he came out of the caboose to carry into effect the instructions of the conductor he saw the engineer start towards the engine, and, without waiting to give him a chance to reach the engine, he signaled the fireman to back the train; and if the engineer had not reached his post at the time of the accident it was the plaintiff's fault in not giving him time to do so. The plaintiff was acting as vice-conductor, and the engineer and fireman were bound to obey his signals; and thereby he assumed the risk of the incompetency of the fireman.

The rule of contributory negligence is laid down in the case of *Railroad Co.* v. *Martin* 4 Pac. 1118 to be "that the doctrine of all the cases is that if a plaintiff so circumstanced might have avoided the injury by the exercise of ordinary care, he can not recover, although the defendant was negligent." It is very apparent from what has been said that plaintiff has wholly failed to show himself entitled to recover, and the Circuit Court erred in not sustaining the motion to exclude the evidence, and on failure of plaintiff to take a nonsuit in not instructing the jury to find a verdict for the defendant; but, as heretofore determined, the defendant having re-opened the case, and proceeded to introduce its evidence, the duty devolves upon the court to ascertain from the defendant's testimony and the plaintiff's additional evidence whether there is sufficient proof in the case to justify the verdict of the jury.

The additional evidence was introduced by the plaintiff to contradict defendant's witnesses about matters not very

material to the issue, and resting entirely upon the memory of those testifying, and adds nothing to the plaintiff's case. The testimony of the engineer is taken, and he testifies fully as to the competency of the fireman, and, further, that he was on the engine, overseeing the fireman, at the time of the accident, and that the fireman managed the engine fully as well as he could himself. The engineer is corroborated in this by the evidence of the plaintiff's witnesses, who testify that when the train stopped at the south switch the engineer got out of the caboose, and started towards the engine, which from that time was moving back towards him. He is also sustained by the fireman, who says that he was on the engine. How the jury could hesitate or disagree in finding that the engineer was on the engine from the positive statement of himself and the fireman, when they had no evidence to the contrary, is more than I can understand, unless they took the statements of plaintiff's witnesses that they did not know where he was as evidence sufficient to justify their determination; and yet they found by their verdict for the plaintiff from these same statements, that the plaintiff in truth did not know whether the fireman was in control of the engine. This is a plain contradiction in their finding to hold that the same evidence establishes one thing as to the plaintiff, and yet establishes an entirely opposite thing as to the defendant, in the face of the positive statement of two unimpeached witnesses. A jury has the right to reject the testimony of any witness if they have reason for so doing. But this is not a matter of mere capriciousness. In complying with their oaths as jurors they must lay aside their predilections, and weigh the evidence in a manner becoming intelligent human beings; and they are derelict in the discharge of their duties if they ignore the evidence without cause, and find a verdict according to their preconceived prejudices and feelings.

In the case of *Corson* v. *Railroad Co.*, 76 Me. 244, the jury were said to have found their verdict on the personal appearance of a certain witness before them, and the court, in commenting on the matter, said: "If the jury undertook to decide that Arnold was an unfit person to be em-

ployed as a brakeman on account of what they saw or
supposed they saw or could read in his face and manner
while testifying before them as a witness, they did fall into
a grave error. As well might a jury find a man guilty of
murder because in their opinion they could see guilt in his
face. The law does not recognize physiognomy as an art
or science sufficiently reliable to found a verdict upon, not
even against a railroad corporation. In a case like this
the law imposes upon the plaintiff the burden of proving
that the defendant corporation has been guilty of negligence
in employing a man known to be unfit for the place which
he is to fill, and we feel no hesitation in saying that this
burden can not be sustained by the man's looks and manner
while testifying as a witness "

For some reason the jury rejected the testimony of both
the defendant's witnesses. The record presented here does
not justify them in so doing, and there can be no question
but that the evidence clearly establishes the fact that the
engineer was on the engine. Such being the case, it de-
volved upon the plaintiff to prove that the fireman was so
competent as to be unable to execute the directions given
him by the engineer; and, if none were given, that his in-
competency in managing the engine was the proximate
cause of the injury. It matters not whether the engineer
is present or absent, if he puts a wholly incompetent fire-
man in charge of an engine, and by reason of that incom-
petency any of the employes on the train, other than the
engineer is injured, the company is liable, because the law
holds that the engineer's act in placing the fireman in
charge of the engine is an employment by the company,
and therefore it should be he held to answer for the results
of such employment.

On the question of competency both the engineer and
fireman sustain the latter's experience and skill in the
management of an engine—that all the signals were prop-
erly answered, and the couplings, so far as the movements
of the engine were concerned, were properly made. Cer-
tainly there is nothing in this evidence to supply the plain-
tiff's deficiency. On the contrary, it fully establishes the
defendants entire innocence of the negligence charged.

The plaintiff relies on the case of *Railroad Co.* v. *Thomas, Adm'r* (17 S. E. Rep. 884). This case is strictly in accordance with this opinion, but is not a parallel case with that made out by plaintiff's evidence.

The engineer turned over his engine to an inexperienced fireman, who had only been in the service of the company for three or four weeks. The conductor, in charge of a yard-crew consisting of the engineer, fireman, and three brakeman, including the plaintiff, who had only been in the service of the company for a short time, was engaged in shifting cars and making up trains. The conductor, who was aware of the fact that the fireman had never been in the employ of a railroad before, but was raw and inexperienced, and that the engineer had turned over the engine to him, undertook to make a dangerous running and flying switch. When the time came to slack the engine the fireman, without shutting off the steam, as he should have done, slackened by reversing the engine, and, as a consequence the cylinders got full of steam, and of all this the brakeman who was on the rear of the engine, with his back to the fireman, knew nothing. After the brakeman withdrew the coupling pin, and cut the engine loose from the car, the fireman, without again shutting off the steam, as he should have done, threw the lever forward as far as it would go, thus giving full effect to the steam accumulated in the cylinders. This accumulated steam, being thus brought suddenly into full play, "caused the engine to start or jump suddenly forward with such great force as to jerk the brakeman off, and break his hold, and throw him on the track. He was run over by the car and killed. This statement is condensed from the opinion of the judge in that case.

The court held the company liable—First, because of the negligence of the engineer in turning the engine over to a raw and inexperienced fireman ; and, second, because the conductor was negligent in exposing the men under his control to a danger that he could have avoided by the exercise of reasonable care. The incompetency of the fireman, and the unskillful and ignorant manner in which he managed the engine, and that this was the proximate cause

of the injury and death of the brakeman, were established by incontrovertible proof.

But in the case now under consideration the plaintiff has failed to prove the incompetency of the fireman, that he was guilty of any unskillful or ignorant management of the engine, or that the accident was the proximate result thereof. On the other hand, the defendant shows that the fireman was experienced and competent, that he did manage the engine in a skillful and careful manner, and that there was no negligence on its part. The facts and circumstances surrounding this unfortunate accident under the settled rules of law applicable thereto compel us to hold, however kindly and charitably disposed we may feel towards the plaintiff in his crippled condition, that it was one of the assumed risks and ordinary results of the dangerous employment in which he was engaged, and for this reason the judgment is reversed, the verdict of the jury set aside, and a new trial awarded the defendant.