# CHARLESTON

WILLIAMS & DAVISSON COMPANY *v.* FERGUSON CONTRACTING
COMPANY.

Submitted February 6, 1906.    Decided October 30, 1906.

1.  EXCEPTION.
    Where an exception was saved to the ruling of the court in a
    general bill of exceptions certifying all the evidence, admitting
    evidence claimed to be inadmissible but is not made the subject of
    a special bill of exceptions, being saved in that way and insisted
    upon in his brief, by the objecting party, it is proper to be reviewed
    and considered by the appellate court.   (p. 430.)

2.  MOTION TO EXCLUDE— *Waived by Defendant.*
    Where, after the plaintiff has introduced all his evidence, a
    motion of the defendant to exclude from the jury all the plain-
    tiff's evidence has been overruled, defendant proceeds to intro-
    duce his evidence in defense, the appellate court will disregard
    said motion, as having been waived by the defendant, notwith-
    standing the exception to such ruling is made the subject of a
    separate bill of exceptions, and will not reverse the judgment, for
    that cause.   (p. 430.)

Error to Circuit Court of Braxton County.

Action in *Assumpsit* by Williams & Davisson Company
against Ferguson Contracting Company.    Judgment for
plaintiff, and defendant brings error.

*Affirmed.*

HINES & KELLY, and HALL BROS., for defendant in error.
HAYMOND & FOX, for plaintiff in error.

McWHORTER, PRESIDENT:

This was an action of *assumpsit* brought in the circuit
court of Braxton county by Williams & Davisson Company,
a corporation, against the Ferguson Contracting Company,
a corporation, for the price of a consignment of powder and
dynamite alleged to have been furnished by plaintiff to de-
fendant of the value of $1,100.    The defendant entered its
plea of *non-assumpsit* to which plaintiff replied generally, a
jury was impannelled and sworn to try the issue and having
heard the evidence and arguments of counsel returned a ver-
dict in favor of plaintiff for $1,145.47 damages.    The de-

fendant moved the court to set aside the verdict of the jury because it was contrary to the law and the evidence, which motion the court overruled and entered judgment upon said verdict. The defendant was a contractor for the construction of certain sections of the Coal and Coke Railway and sub-contracted to Wm. M. Powell & Co. a certain part of its said work; in the prosecution of the work contracted to be done by said Powell & Company they purchased from plaintiff the powder and dynamite sued for. The dynamite was shipped by plaintiff about February 27, 1904, to Cogar Station in Braxton county, consigned to the shipper, to be used by Powell & Company in their work and to be paid for as used. Powell & Company failed to complete their work and under the provisions of their contract with the defendant company, the latter took charge of the work and used the material on hands in the construction of the work, and the action was to recover the value of the dynamite from the defendant, claiming that the sale to Powell & Company of the dynamite was not completed by delivery, and the same having been taken and used by the defendant, it became liable either by express or implied promise to pay for it.

In the course of the trial the defendant took six several bills of exceptions to certain rulings of the court and defendant procured from this Court a writ of error and *supersedeas,* The first bill of exceptions is as to the admission of the evidence of Charles Wyckoff to prove the declarations of H. E. Manderville a member of the firm of Wm. M. Powell & Company. The witness was testifying in relation to a conversation he had with Manderville in relation to the claim of plaintiff for the dynamite, when he was asked by plaintiff's counsel, "What did Mr. Manderville say?" to which question defendant objected, which objection was overruled and the witness answered, "Mr. Manderville told me that he wanted to get the matter adjusted, when I talked to him about the matter, and then he called me over the phone and said to charge it to the Ferguson Contracting Company, H. E. Manderville, Superintendent, and he also told me in person that he was superintendent of the works over there." To which action of the court in overruling its objec-- tion to said question and permitting said witness to answer as·

aforesaid defendant excepted and then moved the court to exclude from the jury the said statement of said Wyckoff, when the court said, "I think I will exclude what he said about being superintendent of that particular work," but refused to exclude the statement. There is a similar exception taken to the ruling of the court in overruling the objection made by the defendant to the testimony of Robert Pollard where he is asked, "What, if anything, did Mr. Manderville say to you about this dynamite having been used on the work after he had taken charge for Ferguson? A. He said that Ferguson had taken charge of the work, and said he was going to complete it, and he was superintendent, and said he took charge of it in a deed of trust, and I made a remark about what they had secured, and about some horses and carts and several things, and he said they had taken charge of a car of dynamite which Powell had originally bought from the Williams & Davisson people, and I asked him where it was, and he said it was in the magazine, and I asked him if he was going to ship it back and he said, no, that arrangements had been made for Ferguson to use it." An exception was saved to this ruling in the general bill of exceptions No. 6 which certifies all the evidence but is not made the subject of a special bill of exceptions, but being saved in that way and insisted upon by the plaintiff in error in his brief, it is proper to be reviewed and considered by the appellate court. See *Snyder* v. *Railway Co.*, 11 W. Va. 15, 32; *McDodrill* v. *Lumber Co.*, 40 W. Va., 564, 570. The testimony so excepted to related to the agency of Manderville as manager in charge of the work for Ferguson Company and his authority in the premises. The conversation narrated by witness Pollard, he states, was after Walker, the chief engineer and general manager of defendant company, had told him that Manderville was superintendent for defendant company, and the testimony of witness Williams hereinafter set out, where he gives a conversation between J. B. Walker, chief engineer and manager of defendant company, Mr. Manderville and himself and which testimony is not objected or excepted to, touching such agency of Manderville, was sufficient to render the evidence admissible.

Bill of exceptions No. 2 is to the overruling by the court

of the motion of the defendant to exclude from the jury all the plaintiff's evidence, after the plaintiff had introduced all its evidence in chief and before the defendant had introduced any evidence.   After the overruling of defendant's motion to exclude plaintiff's evidence the defendant proceeded to introduce its evidence in the case.   It has been frequently held by this Court that when a motion has been made to exclude the plaintiff's evidence for insufficiency and the motion overruled, the defendant by proceeding with its defense and introducing its evidence shall be taken to have waived its exception to the ruling of the court in refusing to exclude the evidence.   *Trump* v. *Tidewater Co.*, 46 W. Va. 238, (32 S. E. 1035;) *Core* v. *Railroad Co.*, 38 W. Va. 456, (18 S. E. 596;) *Billingsley* v. *Stuttler*, 52 W. Va. 92.

Bill of exceptions No. 3 goes to the admission of the testimony of Charles Wyckoff over the objection of the defendant where he is permitted to testify that he had sold goods to Cole, one of the superintendents of the defendant company, without a requisition from Mr. Walker, chief engineer, or the Burnsville office.   It is claimed that this evidence was admissible to show the manner of doing business by the defendant company and for the purpose of contradicting the witness Walker, chief engineer, who had stated that defendant's superintendents were not authorized to buy supplies without a requisition from the office at Burnsville.   For the purpose indicated the testimony was admissible.

Bill of exceptions No. 4 goes to the giving of instructions, on behalf of the plaintiff, Nos. 1, 2, 3, 5 and 6; and bill of exceptions No. 5 to the ruling of the court in refusing to give on behalf of the defendant instruction No. 2.   Plaintiff's instructions given by the court complained of are as follows:

"1:—The Court instructs the jury that if they believe from the evidence that the dynamite in question was consigned to the Williams & Davisson Co., and that the title to the said dynamite remained in The Williams & Davisson Co., until received or accepted by Wm. M. Powell & Co., and if they further believe from the evidence that said dynamite was not received or accepted by Wm. M. Powell &

Co., but was taken and used by the Ferguson Contracting Co., then they should find for the plaintiff the value of said dynamite.

"No. 2:—The Court instructs the jury that, if they believe from the evidence that the dynamite in controversy was consigned to the Williams & Davisson Company with the understanding that Wm. M. Powell & Co. were to have it, if they further believe from the evidence that, before said dynamite was received or accepted by the said Powell & Co., The Ferguson Contracting Co. had taken charge of the work of the said Wm. M. Powell & Co., and that the said dynamite was not received or used by the said Wm. M. Powell & Co., then if they further believe from the evidence that said dynamite was taken and used by the said Ferguson Contracting Co., they should find for the plaintiff the value of said dynamite as shown by the evidence.

"No. 3:—The Court instructs the jury that even if they believe from the evidence that the said Manderville was not authorized to purchase dynamite for the use of the said Ferguson Contracting Co., and that he was not authorized to agree that the Ferguson Contracting Co. would pay for the same; yet if they further believe from the evidence that the dynamite in question was consigned to the Williams & Davisson Co. with the understanding that the said Wm. M. Powell & Co. was to have the same, but that said dynamite was not received by the said Wm. M. Powell & Co., but belonged to plaintiffs, and was taken and used by the said Ferguson Contracting Co., they should find for the plaintiffs whatever amount they believe from the evidence the said dynamite was reasonably worth.

"No. 5:—The Court instructs the jury that if they believe from the evidence that the dynamite mentioned in this case was shipped by the plaintiff to Wm. M. Powell & Co., on consignments, but was not received by Wm. M. Powell & Co., that after it arrived at its destination, the defendant, the Ferguson Contracting Co., took charge of the railroad work then being done by said Wm. M. Powell & Co., and received, consumed and used said dynamite on said work for their own benefit, then they should find for the plaintiff such sum as they believe from the evidence the dyna-

mite so used by said Ferguson Contracting Co. was reasonably worth.

"No. 6:—The Court instructs the jury that if one consumes or converts to his own use property of another, the law implies an agreement on the part of the person so consuming or converting such property to pay to the owner the reasonable worth of said property."

Instruction No. 1 is objected to because it leaves to the jury the question of determining whether the plaintiff retained title to the dynamite and in that it is in direct opposition to the bill rendered by plaintiff to Powell & Company and directs the jury that if it finds that the Ferguson Company took and used the dynamite, then it should find for the plaintiff. It is claimed that this is clearly erroneous because under the evidence it could not be a question for the jury to determine whether Powell & Company received or accepted the dynamite; that unquestionably under the testimony the defendant did not receive it from the car. As to whether the defendant did receive it from the car is one of the principal questions for the jury. It is shown that it was taken from the car on the 28th or 29th of March and it is further shown by the bill of sale of all the personal property of the Powell Company to the Ferguson Contracting Company, made on the 26th of March, 1904, that the Powell Company sold and transferred to the Ferguson Contracting Company all of its property then located on the Coal and Coke Railway on Copen Run, Braxton county, West Virginia, known as section 105 of the Coal and Coke Railway, and afterwards in a chancery attachment proceeding in the circuit court of Braxton county against the said Powell Company, the Ferguson Company filed its answer setting up the contract between it and the Powell Company and showing that under said contract it was "compelled to take charge of the work of completing the said contract, and the said Wm. M. Powell & Company then sold and delivered to this respondent absolutely all of the said plant, and all of their personal property and effects of every kind and character used by them in connection with the said work, and this respondent was at the time of the suing out of the attachment aforesaid, in the actual, exclusive possession of all the said property, and was and still is,

the owner thereof, and was then, and still is, proceeding to complete the work undertaken by the said Wm. M. Powell & Company in accordance with the provisions of the contract between respondent and said Wm. M. Powell & Company." The answer continuing further says: "Respondent denies the allegations in the said bill, that the said Wm. M. Powell & Company were in possession of the property at the time of the institution of this suit, or at any time since, and denies that they have had any use or control thereof whatever, at any time since the first day of April, 1904, at which time the said Wm. M. Powell & Company declared their inability to complete the contract, and delivered to the respondent all of the plant, horses, scrapers, carts, commissary and all personal effects they had in connection with the said work, and respondent says that it has had the absolute possession and control of said property all of the time since the 1st day of April, 1904, and is by virtue of the contract between it and the said Wm. M. Powell & Company at the time of the delivery of the said property to it, the absolute owner of said property; and respondent avers that the plaintiff did not require any lien on the said property, or any part thereof, by reason of the suing out and levying the attachment in the bill and proceeding mentioned and set out." This answer was in evidence and read to the jury, as appears from a written agreement signed by the parties to this cause and filed by them to be considered as part of the record as if brought up by *certiorari.* Here we have the solemn declaration in writing of the defendant company that by virtue of the bill of sale of March 26, 1904, it owned and possessed all the property of every kind and character of the said Powell & Co. and yet in said bill of sale there is no mention of the dynamite, an item of the value of $1,100. After particularizing the items of property going to make up the property owned by the Powell Co. and assigned and transferred by them, mentioning all other things of value even down to the "cook outfit and commissary stores" worth in the aggregate probably an insignificant sum. Is it at all probable that if the dynamite had been received by the Powell Co. at the time of making the transfer, that an item of such great value would have been omitted from the list of property assigned? It is insisted by counsel for plaintiff

in error that there could be no reservation of title by plaintiff company "unless there had been a reservation of title, such as prescribed by the statute, and that recorded, or at least actual notice to parties affected." This is true only as to creditors of, and purchasers with notice from, the buyer; as to such, reservation of title is void, unless recorded as provided by section 3101 of Code (section 3, chapter 74.) It is insisted also that the letter of plaintiff company of April 16, 1904, to defendant company stating that they had received "instructions from H. E. Manderville formerly of the firm of Wm. M. Powell & Co. to charge a consignment of dynamite amounting to 10,000 lbs. to the account of Ferguson Contracting Co., Burnsville, as he had made arrangements with you to that effect" and stating further that they understood that a good portion of the powder had been hauled over on the work and that the balance was in storage in the defendant company's magazine, at Cogar, could only mean that the plaintiff knew that the dynamite had been delivered to Powell & Co. represented by Manderville. This letter was written some two weeks after Manderville had been put in charge of the work by and for the defendant company as its superintendent, if he had in fact been so employed, and whether he had or had not was a question for the jury from the evidence as was also the question of the delivering of the dynamite to Wm. M. Powell & Co., and the authority of Manderville to direct the same to be charged to the defendant company who used it on their work. The dynamite was not hauled to the work until after the work was taken charge of by the defendant company, as it was not removed from the car until the 28th and 29th of March, two days after the sale or assignment by Powell & Company to defendant company. There is no dispute about the fact that defendant company used all the dynamite after the Powell Company had turned its property over to it. The evidence shows that the dynamite was unloaded from the car two or three days after the transfer of this property to the Ferguson Company and there is evidence tending to show that Manderville, who had been in charge of the work for Powell & Company, was continued in the superintendency of the work in the employment of the Ferguson Company, although it is denied by the Ferguson

Company; while the evidence on this point is somewhat conflicting the great preponderance is with the contention of the plaintiff, that Manderville was acting for defendant company. The plaintiff introduced some letters written by it to the Ferguson Company concerning the proposition or suggestion of Manderville to bill the 10,000 pounds of dynamite to the defendant and charge same to its account, and as late as the 16th of April, 1904, wrote Ferguson Company asking it whether it would "confirm this order, we will take pleasure in billing same to you at 11c per lb. f. o. b. Cogar Station. We understand a good portion of this powder has been hauled over on the work and the balance is in storage in your magazine at Cogar. We will be glad to have any information you can give us regarding the arrangements you have made with Mr. Manderville with reference to handling his work, and the accounts due for material furnished him on his original contract." And on the 7th day of May, 1904, the Williams & Davisson Company addressed the following letter to the Ferguson Company: "Will you kindly advise whether the arrangements suggested by Wm. M. Powell & Co. to charge 10,000 lbs. Dynamite to your firm, which was turned over to you by Wm. M. Powell & Co., being that amount of our stock which they held on consignment, will be satisfactory to your firm. We are quite anxions to have this matter closed, and before making entry on our books would like confirmation of this order from your firm." This letter describing the dynamite as "being that amount of our stock which they held on consignment," taken together with the letter of April 16th would show that plaintiff company was still claiming title to the dynamite and that the Powell Company had not received the dynamite but that it was still held on consignment. If, as claimed by defendant's counsel, it was beyond all question shown that the dynamite had been delivered to and accepted by Powell & Company the instruction would be bad, but this being an open question of fact, it was for the jury and the plaintiff was entitled to the instruction.

The Second instruction is claimed to be subject to the same objection as the first and the additional objection that the jury is told by it that if it should believe that the de-

fendant had taken charge of the work of Powell & Company and that Powell & Company had not received or used the dynamite and that it was taken and used by the defendant it should find for the plaintiff the value of the dynamite. It is claimed that this instruction does not contain any of the essential elements showing any obligation on the part of defendant to account to plaintiff for the dynamite.    If this dynamite had never become the property of Powell & Company and the defendant company had notice by the contract made with Powell & Company that it would not belong to it as it took a transfer of all the property of Powell & Company and the dynamite was not included in said transfer and if the defendant company took and used the dynamite knowing that it did not belong to the Powell Company it would be liable for the value of the dynamite to the owner and that part of the instruction would be good on the same theory that instruction No. 6 is good, as an abstract proposition of law that where one consumes or converts to his own use property of another the law implies an agreemant on the part of the person so consuming or converting such property to pay the owner the reasonable worth of such property.

It is contended that the first part of instruction No. 3, given for plaintiff, relative to the authority or want of authority on the part of Manderville to purchase dynamite for the use of defendant company, or to authorize plaintiff to charge defendant with the dynamite furnished to Powell & Company, was, in effect, to tell the jury that it had the right to consider in its finding, if it believed from the evidence, that Manderville was authorized to purchase dynamite for the use of the defendant or that he was authorized to agree that the defendant should pay for the same.    There was evidence tending to prove that Manderville was acting as superintendent for the Ferguson Company after it took charge of the work of Powell & Company and that "he did buy such things as he needed for the work without having to consult any higher authority;" this was stated very positively and emphatically by witness Robert Pollard and the jury seemed to take that view of the case.    Mr. Pollard is corroborated largely by Mr. Williams in his interview with Mr. Walker, the accredited manager of defendant company,

who raised no objection to paying for the powder, accord-
ing to Mr. Williams statement, or denied liability of de-
fendant company for the same, because they had received it
as the property of Powell Company.    The last part of the
instruction is proper; the same ground is covered by instruc-
tions Nos. 1 and 2 which were proper to be given in view of
the testimony of J. W. Williams, a member of the plaintiff
company, in his account of his conversation with J. B.
Walker, the chief engineer and manager of defendant
company.    Williams in his testimony was asked, "Did Mr.
Manderville say, in the presence of Mr. Walker, to you,
that they had used the powder?" and answered, "When I
told, or rather asked him about the powder, Mr. Walker
turned around and said, 'Did we use this powder?' and Man-
derville said 'That's the powder we have been using on
this work, since I took charge of the work,' then Mr. Walker
said, 'Is it all gone,' and he said, 'Yes, it has all been
used.'

Q.   Did Mr. Walker deny their liability for the powder?

A.   No sir, he lead me to believe always that the matter
would be amicably and satisfactorily settled.

Q.   Did Mr. Manderville state in the presence of Mr.
Walker, that he had charge of the work for the Ferguson
people?

A.   Yes sir.

Q.   Did Mr. Walker deny that?

A.   None whatever.

Q.   They were discussing the work there?

A.   Yes sir.

Q.   I believe you stated, that Mr. Manderville said, that
he had used the powder on the work, after he had taken
charge, after that?

A.   Yes sir, every pound of it after he had taken charge,
of the work as superintendent for the Ferguson Contracting
Company.

Q.   Mr. Manderville (meaning Mr. Walker) didn't deny
but what Manderville was superintendent?

A.   He did not."

Mr. Walker in his testimony gives his version of this
conversation and what took place in the presence of Mr.

Manderville which is somewhat different from that of Mr. Williams. Mr. Walker was asked, "State what occurred, and what note you have of it, if any? A. Well, Mr. Manderville and I had been up at Mr. C———, on this day and started down to his camp. I had to stop for some purpose, and he got ahead of me. Mr. Williams was going up towards Mr. C——— I think and met Mr. Williams, or anyhow when I got down to his camp, they had both been there some few minutes, Mr. Williams and Mr. Manderville. Mr. Williams wanted to know something about the adjustment of this powder business, and I told him that I had gotten his letter of April 16th, but that it had been addressed to Copen instead of Burnsville, and had been delayed, and had only reached me about the 8th or 9th of May, which was the first intimation that this company had, that they had ever bought a pound of powder of Williams & Davisson Company. As I told Mr. Williams, I wrote Mr. Richmond, our auditor and purchasing agent, and told him the facts in the case, and I would make no decision until I heard from him, and that I hoped everything would be satisfactorily adjusted. That's about the substance of our conversation. That might not be the words used, but it is the substance of the conversation." Further in his testimony he denied that Manderville had ever been agent for his company. There was much other testimony on the part of Williams as well as Walker. Williams states that when they were talking about the Ferguson Company becoming responsible for the payment of the debt, it never was contended by Walker, or any of the Ferguson Company, that they refused to assume it or pay it because they had got it from Powell & Company or that it belonged to the Powell Company. Having held instructions Nos. 1 and 2 good, it follows that No. 5 was also proper as the only difference in it and the first mentioned is, that it adds after the words "use of the dynamite" the words "for its own benefit." This would certainly not make it less liable because it used it for its own benefit.

Instruction No. 2, asked for by the defendant refused, as set out in bill of exceptions No. 5, is as follows: "The Court instructs the jury that if they believe from the evidence that the plaintiff shipped to it, at Cogar Station the

powder for the price of which recovery is sought in this suit, under contract or agreement with Wm. M. Powell & Co. that said powder was for said Company, or was so shipped on the order of said Wm. M. Powell & Co. and that said Wm. M. Powell & Co. took charge of the same, unloading it from the car and taking it into their possession; that said Wm. M. Powell & Co. was engaged in Construction work on railroad under contract with the defendant, read in evidence, at the time said powder was so shipped and taken into possession by Wm. M. Powell & Co.; and that the defendant under provision of said contract between it and the said Wm. M. Powell & Co., took charge of said construction work and continued the same thereunder, and that said powder was used on said work contracted to Wm. M. Powell & Co. by defendant, then there is no right in plaintiff to recover against the defendant for the price of said powder, unless it shall have been proven that the defendant expressly agreed to pay the plaintiff therefor.''

It is insisted by plaintiff's counsel that this instruction was improper because it assumes that the dynamite was used by the defendant company on the Powell Company work, while there is no evidence tending to show that fact. This is not the case, according to the evidence of Williams himself, Mr. Walker elicited from Manderville by appealing to him as to whether they, the Ferguson Company, had used this powder, the statement, ''that's the powder we have been using on this work, since I took charge of the work,'' and that it had all been used. However, instruction No. 7 given for the defendant does cover this same ground, where the jury is told if they ''believe from the evidence that said Wm. M. Powell & Co. did so fail, and the defendant did take charge of said work and proceed therewith, and is still proceeding therewith, keeping an account of the expense of said work, charging the expense thereof against the said company, and crediting to said Company the monthly estimates contemplated by the contract; and that in the course of such work the defendant did use thereon the powder sold by plaintiff to Wm. M. Powell & Co. without any notice or knowledge of reservation of title by plaintiff, and acquiring the said powder from said Wm. M. Powell & Co. without any contract or agreement to pay plaintiff therefor,

such use alone does not render the defendant liable to the plaintiff for the price of said powder." And in instructions Nos. 3 and 4 given for defendant the jury were instructed that such taking of the powder by the defendant and its use without knowledge of plaintiff's claim, defendant could not be held responsible to the plaintiff for the price of the powder in the absence of any agreement with plaintiff in relation thereto, in No. 3, and in No. 4 "unless they further believe from the evidence that the defendant expressly agreed to pay for same." The instructions given for defendant so thoroughly covered the defendant's theory of the case, that it could not be prejudiced by the refusal to give No. 2.

For the reasons herein stated the judgment is affirmed.

*Affirmed.*